CITY OF OWENSBORO, KY., v. WESTINGHOUSE, CHURCH, KERR & CO.

(Circuit Court of Appeals, Sixth Circuit. November 27, 1908.)

No. 1801.

1. JUDGMENT (§ 704*)—CONCLUSIVENESS OF ADJUDICATION—PERSONS CON-
CLUDED—CODEFENDANTS.

Where joint defendants appeared by different attorneys, made sepa-
rate answers and defenses, and separate judgments were rendered as
to each, there being no cross-pleadings or issues between them, neither
a judgment against the one nor in favor of the other in said action
created any estoppel as between them which affected a subsequent ac-
tion by the one against which judgment was rendered to recover the
amount of the same from the other as primarily liable therefor.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 1229; Dec.
Dig. § 704.*]

2. COMPROMISE AND SETTLEMENT (§ 11*)—CONSTRUCTION OF AGREEMENT.

An agreement between a city and a contractor for constructing an elec-
tric light plant for the city, who were joint defendants in an action for
damages alleged to have resulted from the negligent construction or
operation of such plant, recited that it was for the purpose of com-
promising and settling all matters of difference between the parties,
among which was the question which, if either, was ultimately liable
for such damages, and provided that in case of a judgment against the
city it might maintain an action over against the contractor, but that
if required by the contractor it should appeal from such judgment and
should not have the right to sue the contractor unless the same should
be affirmed. Held, that the effect of such agreement was not merely
to authorize the city to sue the contractor, which right it already had,
but that when fairly construed it acknowledged the liability of the
company for any judgment which should be finally recovered against
the city.

[Ed. Note.—For other cases, see Compromise and Settlement, Cent. Dig.
§ 51; Dec. Dig. § 11.*]

3. ACTION (§ 27*)—NATURE AND FORM—CONTRACT OR TORT.

Defendant contracted to construct an electric light plant for plaintiff
city "in a workmanlike, safe and skillful manner." After the plant was
in operation a boy was killed as the result of the defective insulation
of a wire, and a judgment therefor was recovered against the city.
Held, that an action by the city to recover the amount of such judg-
ment from defendant was not one sounding in tort for negligence, but was
one for breach of the contract in consequence of which the city had suffer-
ed damages, and that the fact that the city was operating the plant at the
time of the injury would not preclude a recovery, provided it was itself
without fault.

[Ed. Note.—For other cases, see Action, Cent. Dig. §§ 160–176; Dec.
Dig. § 27.*]

4. INDEMNITY (§ 14*)—CONCLUSIVENESS OF JUDGMENT AGAINST INDEMNITEE.

To such an action the negligence of the boy contributing to his own
injury would not constitute a defense, in the absence of any claim that
the city had in bad faith failed to present that defense in the action
against it.

[Ed. Note.—For other cases, see Indemnity, Cent. Dig. § 41; Dec. Dig.
§ 14.*]

5. TRIAL (§ 207*)—INSTRUCTIONS TO JURY—PURPOSE AND EFFECT OF EVIDENCE.

Where in such action plaintiff introduced in evidence the record in
the damage suit to show the amount of damages it had sustained by
reason of defendant's breach of contract, and which also showed that a

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

verdict had been returned and judgment rendered against it and in favor of defendant, who was a codefendant in such suit, it was prejudicial error to charge the jury that they might consider such record generally and give the facts therein shown such weight as they thought them entitled to.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 498; Dec. Dig. § 207.*]

In Error to the Circuit Court of the United States for the Western District of Kentucky.

R. W. Slack, for plaintiff in error.
Helm Bruce, for defendant in error.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

SEVERENS, Circuit Judge. On July 25, 1900, the City of Owensboro, Ky., having resolved to itself supply electric light to the city and its citizens, entered into a contract with the defendant in error whereby the latter should for the consideration of $43,700 furnish satisfactory plans and specifications for a system of structures and apparatus for that purpose, and should thereupon erect and equip the same for service in the city. And, in terms, the said defendant company undertook as follows:

"That the said company doth hereby for itself, its successors and assigns, covenant, promise and agree to and with the corporation, its successors and assigns, that the said company, its successors and assigns, will, for the consideration hereinafter mentioned, fully execute and faithfully perform in a good workmanlike manner, all the work required and furnish all the material and machines, which material and machines are warranted to be of good quality and in every respect suitable for the purpose intended, necessary in the erection and installation of the said electric light plant in accordance with the plans, drawings and specifications prepared for said work, which plans, drawings and specifications are hereto attached and which are identified by the signatures of the parties hereto, and are hereby incorporated in and made parts of this contract; and that said company shall find and provide such plant, labor, tools, implements, cartage and materials as shall be proper for the execution, completing and finishing of the contract, and that it will deliver the said electric light plant as aforesaid within the period of one hundred and fifty days from the date hereof and on or before the 25th day of December, next, provided the building to be erected by the corporation for the boilers, engines, etc., is so far completed as to enable the company to put in said boilers, engines. machinery, etc., within sixty days from this date; and the company shall have the right to take possession of said building when the same is so far completed as aforesaid."

When the time arrived for the completion of the work, it was not yet finished, and the city was allowed to take partial possession, the extent of which is not clearly shown and has been the subject of controversy. For the present purpose we need not go into the particulars of it. On May 15, 1901, James P. York, a lad 12 years of age, while playing at the intersection of two streets in the city, laid hold of the end of a suspension wire hanging down by the side of a pole and by which an arc lamp at that place was lowered and raised again to its place. As he laid hold of the wire he received an electrical current

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

of great violence, which caused his death. It was found that the cause of the accident was the coming into contact of the suspension wire with the wire carrying the current at that place, and that it happened in consequence of the neglect to put a brake arm or some such device to carry a loop to effect the insulation of the current wire from the guy wires and suspension wire.

An administrator of the estate of the deceased boy was appointed and brought suit, under a statute of Kentucky, in the circuit court of the state for that county, against both the city and the company, alleging their joint occupation of the electrical system in the city and their joint negligence. Each defendant filed a separate answer, each denied that they had jointly occupied, and each insisted that the other was in the occupation, and, further, each denied that there had been negligence on its part. Both averred contributory negligence on the part of the boy. The case was tried before a jury, which rendered a verdict against the city alone for $5,000. A judgment was rendered against the city, and another judgment was rendered in favor of the company and for its costs. While that suit was pending another action against the city in the same court was brought by one Knox to recover damages for similar negligence in another part of the system, and the city had notified the company and required it to make defense. Thereupon, on November 6, 1901, the city and the company entered into a written agreement, wherein, after reciting that various matters were in dispute between them which they had compromised, it was among other things agreed:

"Third: That whereas there are now three law suits pending and undecided in the Daviess circuit court for the recovery of damages for alleged injuries, one of Ware's Admr. v. Cumberland Telephone & Telegraph Company and another one of York's Adm'r. against the city and said company and one of Herbert Lee Knox against the city, and it is claimed by the city that as between it and the said company the said company is ultimately liable for the amount of any and all judgments, together with interest and costs, that may be recovered in said suits, or any of them, and this claim of the city is denied by said company.

"Now, it is agreed between said city and said company, that if judgment shall be recovered in any of said suits against the city of Owensboro, and said company shall not pay or settle the same when requested so to do by the city, and the said city shall desire to commence and prosecute a suit, or any suits against said company for the recovery of any sum or amount for which any judgment, or judgments, may be obtained in said actions above mentioned, the said city may commence and prosecute any suits, or actions it may deem necessary for the recovery thereof, or about said matters, in the Daviess circuit court, in the state of Kentucky.   *   *   *   The right of said company to transfer any suits or actions that may be brought by said city, as hereinbefore mentioned, into the United States Circuit Court, for the Western District of Kentucky, within the time, and in the mode prescribed by law, is reserved by said company. If any judgments shall be recovered in any of said suits for damages, above mentioned, against the city of Owensboro in said Daviess circuit court, the said company shall have the right to require said city by giving to it written notice to that effect, to prosecute an appeal to the court of appeals from such judgment or judgments. But such notice must be given to the city within thirty days after the rendition of the judgment in said circuit court. And the city shall not have the right to institute any of said suits or actions against said company, as aforesaid, until said city shall have in good faith prosecuted an appeal to the court of appeals under said notice, if same shall be given as aforesaid, and said judgment affirmed."

Pursuant to this agreement, the company gave notice to the city that it required the city to carry the judgment against it in the York Case to the Court of Appeals of Kentucky. The city complied with this request, and took the case to the Court of Appeals, where, after argument, the judgment was affirmed with costs. 117 Ky. 294, 77 S. W. 1130. Upon demand the company refused to pay the judgment, and the city brought its action. It was tried in the court below before a jury, and, under instructions which seem to have left narrow room for the jury, a verdict was rendered for the company.

Conflicting claims are made by the parties in respect to the effect of the judgment in the York Case against the city. Ingenious arguments are made that estoppels were thereby founded in respect to several of the issues pending in this case. But laying aside for the moment the consideration of the effect of the so-called compromise agreement of November 6, 1901, and what was done in the York Case in pursuance of it, we think nothing in the nature of an estoppel in respect to any question now pending between these parties exists in that record. It is true these parties were joined as defendants. But they appeared by different attorneys, made separate answers and defenses; there were, in effect, different verdicts and separate judgments. There was no cross-pleading, nor were any issues made between these parties, nor was anything adjudged as betwixt them, even if such proceeding were permissible under the law of Kentucky. Neither defendant had any control over the pleading or defense made by the other, and neither could take up for review an adverse judgment against the other. To all intents and purposes, the conditions were the same as if independent suits had been brought against each of the defendants. The record and judgment in that case would be prima facie evidence that a judgment had been rendered against the city, and for what amount, on a cause of action which it claims arose from the primary fault of the company; but the question of its arising from the fault of the company would of course still be open, or, if the company could show that the city had not made defense in good faith, that would probably rebut the prima facie effect of the former judgment. 1 Wharton on Evidence, § 820, and the numerous cases there cited; 2 Black on Judgments (2d Ed.) § 604. It must have been anticipated by the company that, if it performed its contract in a careless and negligent manner, the city would be exposed to recoveries for damages in consequence thereof for injuries after the city would have taken possession. If the city made all the defense it could, it had performed its whole duty to the company, and the judgment was a proximate consequence of the fault of the company, the city itself being without fault.

Another question arises in this connection, which is, what was the effect of the agreement made by the parties on November 6, 1901, above set forth? It seems to us that when fairly interpreted it meant to acknowledge the liability of the company if the York suit should go against the city, but provided that in that event the company might require the city to carry the case to the Court of Appeals, and that, in the event the judgment should be affirmed, the company should pay it. What other reason could there be for allowing the company to interfere with the right of the city to control its own case? If the com-

CITY OF OWENSBORO V. WESTINGHOUSE, CHURCH, KERR & CO.    389

pany intended still to deny its liability notwithstanding a final adverse judgment, what motive could the city have for surrendering its control over the case and exposing itself to the costs and expenses of further litigation in the Court of Appeals? We think the city had a reasonable expectation that if the final judgment should go against it the company would pay it, and that the motive of the company was, by gaining that control over the litigation, to avoid, if it could, its liability. It is stipulated in the agreement that until the liability of the city shall become fixed by final judgment "it shall not have the right to institute any of said suits or actions against said company, as aforesaid, until said city shall have in good faith prosecuted an appeal to the Court of Appeals under said notice, if same shall be given as aforesaid and said judgment affirmed." The alternative is that the city shall upon the condition stated have such right. Does this import a bare privilege common to everybody, or a substantive right? But it is suggested that the company had therein agreed to accept service of process. Other matters, however, might be in controversy, such as the question whether a notice had been duly given, or whether the city had prosecuted the appeal in good faith, or the liability for the costs and expenses incurred. There is nothing so irreconcilable as to require a construction which would give the agreement a merely frivolous or elusive effect. The agreement was made as a compromise and settlement of "all their differences," and one of the recited differences was whether the company was "ultimately liable for the amount of any and all judgments" that might be recovered against the city. If the contention now made in behalf of the company is maintainable, that question was not settled, nor was any substantial approach made to it; but the city came out with the same old controversy still pending, and with a further disadvantage attached.

Upon the trial of this cause the court instructed the jury that there were three vital points. The court said:

"The first inquiry is: Did the injury to young York result from the defective construction of the plant by the defendant, in such a way and within such a period, as to bind the defendant for the judgment obtained against the city of Owensboro?

"The second is: Was the plant operated by the plaintiff on May 15, 1901? And if it was, can the defendant be held liable for the damages resulting from the death of the boy?

"Third: Did the boy's death result from any cause, in a primary sense, except his own ignorant and unfortunate act?"

As to the first we make no comment. But as to the second, the court charged the jury that:

"If the injury occurred after the plaintiff took charge of the plant and began to operate it, if you should find that to be the fact, then the plaintiff's action would not have been properly brought for the specific item of alleged damages set up in this suit, but it would have had to be for damages resulting from the breach of the contract, whatever those damages, in such a suit, should be determined to be. Whether it embraced this item along with others or not, we need not now determine.

"But, I repeat, in order to entitle the plaintiff to recover in this case, it must show not merely that the brake arm was not there, but that that was the cause of the injury to York, and that it occurred before plaintiff began the operation of the plant.

"The plaintiff cannot recover at all if at any time before the death of the little boy, York, the city began, in fact, operating the plant, even if the defendant's experts or employés were instructing them."

It would seem that the court misconceived the nature of the action. It was not an action sounding in tort for negligence from which the city was the sufferer, but was an action for the breach of the company's contract to construct the electric light plant "in a workmanlike, safe and skillful manner, according to plans and specifications agreed upon by the defendant and the plaintiff; that in the erection of poles, stringing wires and placing arc lamps, it would use the best material, and have perfect insulation in the transmission of the electric current; that each cross-arm shall be provided with its full number of pins and insulators, whether required by the number of wires or not," in consequence of which breach the city had suffered damage by being compelled to pay for an injury. But aside from this, it was erroneous to instruct that if the city was operating the plant at the time of the injury it could not recover. The mere fact that it was operating the plant at the time of the injury would not prevent a recovery. If, as the plaintiff alleged, the defendant had broken its contract by not properly constructing the works, and the city without knowledge of the fact had taken possession of them, and while it was so in possession, and in consequence of the improper construction, an injury had happened for which it had to pay, the plaintiff was entitled to recover, unless for some other reason it was disentitled. Chicago v. Robbins, 2 Black, 418, 17 L. Ed. 298. Then, as to the third, the court said:

"But when we come to the other proposition, gentlemen, the last one, I instruct you that if the boy, York, knew the wire was charged with electricity at the time, and if, notwithstanding such knowledge, he voluntarily took hold of it, and was killed, the plaintiff cannot recover at all, even though the unfortunate boy may then have mistakenly supposed that standing on a plank would prevent injurious results."

By this the court meant, as subsequently explained, that if York was guilty of contributory negligence the plaintiff in this case could not recover, and that the facts stated would constitute contributory negligence. This instruction was at fault in stating that such facts in the case of a little boy would as matter of law amount to contributory negligence, although it might be so in the case of an adult. But the larger fault was in giving that instruction at all, and submitting it as a decisive question. There could have been no recovery in the York Case, whatever the fault of the boy was, without it was also established that there was fault in the construction of the electrical apparatus. The question of contributory negligence on the part of the boy was not an issue in this case, unless it had been claimed that the city had in bad faith failed to present that defense, and this was not pretended.

Again, the record in the York Case had necessarily been put in evidence to make out the plaintiff's case. The court in its instructions said:

"The case in the state court was brought both against the city and this defendant, and the judge who tried that case instructed the jury as counsel has pointed out to you, and the jury found a verdict upon those issues and instruc-

tions to the effect that the city of Owensboro alone was responsible for the damages in that suit. While I have held that that was not a bar to the action, the evidence, without objection, has been introduced in this case. You may attach such importance to that evidence as you think it is entitled to."

This was not, in our opinion, justifiable. The record of the former case was brought into the case for no such purpose, and the evidence, the instructions of the court, and the verdict of the jury were not competent to be considered and given such importance as the jury might think them entitled to. The court developed the fact that the jury in the former case had found that the city of Owensboro alone was responsible for the damages in that suit. Quite naturally the jury would have said to themselves, "This question has been already determined. True, the court says we are not bound by it, but it would not be proper for us to say that that jury was wrong, and decide it the other way." If a witness who had heard the trial had been called and his opinion asked as to what the verdict should be, his answer could not be more harmful than this reference to the result in the former action.

There are some other assignments of error which we need not consider. They may not arise upon another trial.

The judgment should be reversed with costs, and a new trial awarded.