CADY v. BARNES et al.

(District Court, N. D. Ohio, W. D. October 13, 1913.)

No. 54.

1. EQUITY (§ 345*)—HEARING—ANSWER AS EVIDENCE—INFORMATION AND BELIEF.

Where, in a suit to foreclose a deed of trust as a mortgage, the bill did not waive answer under oath, and the answer, though under oath, pleaded defendant's view of the facts concerning the consideration of the deed on information and belief only and not positively, the answer did not compel complainant to prove the issue by two witnesses or by one witness, and corroborating circumstances.

[Ed. Note.—For other cases, see Equity, Cent. Dig. §§ 715-724; Dec. Dig. § 345.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. MORTGAGES (§ 526*)—FORECLOSURE—REDEMPTION.

In proceedings to foreclose a mortgage in Ohio, the mortgagor retains an equity of redemption after foreclosure decree and order of sale until actual confirmation of the sale.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 1530–1534; Dec. Dig. § 526.*]

3. MORTGAGES (§ 497*)—FORECLOSURE DECREE—EFFECT—BAR.

Proceedings to foreclose a prior mortgage on certain land having been instituted, complainant's petition charged that defendants C. and wife had or claimed to have some interest in the premises, and prayed that they be compelled to set up the same or be forever shut off from asserting it. C. appeared, but defaulted for answer, and a foreclosure decree was entered declaring that C. and wife had no interest in or lien on or claim to the premises or any part thereof. Before sale, however, the mortgagor conveyed the property to his brother, who paid the first mortgage debt and procured a dismissal of the suit. *Held*, that C.'s default operated only as an admission of the first mortgagee's prior interest in the land; and hence the decree was not a bar to C.'s second mortgage lien.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 1469, 1471–1473; Dec. Dig. § 497;* Judgment, Cent. Dig. §§ 1060, 1164, 1294.]

4. SUBROGATION (§ 15*)—PURCHASER FROM MORTGAGOR—FORECLOSURE—PAYMENT OF DEBT.

Suit having been instituted to foreclose a first mortgage on certain land, and decree having been entered barring the interest of a second mortgagee, who was made a party to the suit, but failed to answer, the mortgagor before sale conveyed the property to his brother, who paid the first lien and procured a dismissal of the suit. *Held*, that the grantee, having elected to take the property in privity with the mortgagor rather than to acquire the first lienholder's interest by a purchase at a sale under the decree, was not entitled to subrogation to the rights of the first lienholder as against the second mortgagee.

[Ed. Note.—For other cases, see Subrogation, Cent. Dig. §§ 40, 44; Dec. Dig. § 15.*]

In Equity. Bill by Edward H. Cady, trustee for the Ohio Savings Bank & Trust Company, against John E. Barnes and others. Decree for complainant.

King, Tracy, Chapman & Welles, of Toledo, Ohio, for plaintiff.

Lasley & Lasley and Ben W. Johnson, of Toledo, Ohio, for defendants.

KILLITS, District Judge. About April 1, 1908, the Barnes Grain & Commission Company, of which one Charles W. Barnes was president and manager, was indebted to the Ohio Savings Bank & Trust Company, in the sum of about $2,900, on several promissory notes. In order to secure this indebtedness and such further advances as the bank might make, said Charles W. Barnes, his wife joining him, and his father, executed and delivered to Edward H. Cady in trust for the bank a deed conveying the property involved in this litigation; it being understood that the deed, although absolute in form, should be treated as a mortgage. At this time the land in question had already been conveyed by mortgage still subsisting to the Fremont Savings Bank Company, of Fremont, Ohio, and whatever rights then were required by Cady as trustee were subject to said mortgage.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

In so stating the facts the court is finding adversely to the claim of the defendant upon the facts that the deed to Cady was given to secure future advances only. Were there very much room in the testimony to hesitate on this point, the court would feel required to resolve its doubts in favor of the bank on the theory that it was absurd to suppose that the bank would neglect to insist on security for its loans then effected to the Barnes Company before agreeing to future advances, but the letter shown in evidence from the bank to Mr. Barnes, stating the terms upon which the deed was accepted, is evidence in favor of the court's conclusion of too positive a character to be lightly regarded.

[1] We may at this time also dispose of the defendant's contention that in view of the fact that the answer is sworn to, the oath not having been waived in the bill, the complaint is not sustained by the requisite quantum of evidence to meet the burden of proof cast upon the plaintiff respecting this point, for, touching the question of the consideration of the deed, the answer pleads defendant's view of the facts upon information and belief only and not positively; wherefore the rule does not apply. Simpkins, Suit in Equity, p. 437. Besides, the letter referred to above, stating the terms on which the deed is received, is corroborative evidence of so high a character as to suffice to satisfy the rule if it were applicable.

All the parties in interest prior to December 18, 1911, were residents of Ohio and within the jurisdiction of this court. The Fremont Savings Bank Company brought an action in the court of common pleas of Sandusky county to foreclose its mortgage, making Charles W. Barnes and wife and Cady and wife parties defendant. Cady entered his appearance but defaulted for answer. Barnes answered, taking issue solely with the plaintiff in the action and raising no issue between himself and Cady. Plaintiff's petition in the case, touching the Cady interest, simply alleged:

"That the defendants Edward H. Cady and Emma W. Cady have or claim to have some lien or interest in or to said premises, and plaintiff asks that they be compelled to set the same up or be forever shut off from asserting the same."

A decree of foreclosure was entered in favor of the plaintiff bank, in which a finding was had against the Cadys in these terms:

"And the court further finds that the said defendant Edward H. Cady and the defendant Emma W. Cady have no interest in or lien on or claim to said premises or any part thereof."

An order of sale was allowed and issued and the property advertised to be sold December 19, 1911.

[2] By principles familiar to all Ohio lawyers, an equity of redemption remained in Charles W. Barnes notwithstanding the decree of foreclosure and order of sale until an actual confirmation of a sale had. With his interest thus subsisting in the property, on the 18th of December Barnes effected a sale of this property to his brother, John E. Barnes, of Chicago, one of the defendants in the case here. Having agreed upon the terms of sale, the two brothers visited Fremont,

consulted an attorney, who assured them that the record effectually shut out as to all persons the Cady interest, and consummated their business by paying up and causing to be entered as satisfied on the court records the judgment in behalf of the bank, merging the mortgage, and having the action, after payment of the costs by them, dismissed without further procedure and obtaining a release and discharge of the mortgage from the bank and causing the same to be entered of record in the office of the county recorder. Thereupon a conveyance was made of this property by Charles W. Barnes and wife to John E. Barnes.

There can be no question whatever upon the record before us but that the payment of the bank's judgment and court costs by John E. Barnes was part of the consideration for the conveyance of this property to him. A small balance remaining after the payment of these claims was paid to Charles W. Barnes.

Cady, as trustee, thereafter commenced in this court the action now being determined to foreclose the lien in the nature of a mortgage held by him upon this property by virtue of the deed to him above referred to, and the facts we have just recited are set up by way of defense by John E. Barnes and wife, with the further claim that out of these transactions grew a right of subrogation to Barnes of the lien of the Fremont Savings Bank Company.

Three questions were presented on the hearing. The first one of fact the court has already disposed of. The other two are: (1) Were the rights of Cady under his deed foreclosed in favor of the defendant John E. Barnes, as a successor in interest to Charles W. Barnes, by the proceedings in the Sandusky common pleas court? (2) Is John E. Barnes, under the circumstances, subrogated to the rights of the Fremont Savings Bank Company in its decree foreclosing its mortgage?

[3] First, as to the scope of the decree. Does it go further than to simply adjudicate the rights of the plaintiff in the Sandusky county case (the bank) against Cady, to the end that Cady's interest in the property was foreclosed in favor of his codefendant Charles W. Barnes?

Chief Justice Chase, in Graham v. Railroad Co., 3 Wall. (70 U. S.) 704, on page 711 (18 L. Ed. 247), said:

"It is true that it is the constant practice of courts of equity to decree between codefendants upon proper proofs, and under pleadings between plaintiffs and defendants, which bring the respective claims and rights of such codefendants between themselves under judicial cognizance. In the case of Farquharson v. Seton, cited by counsel, the pleadings showed that Farquharson, as a codefendant with Seton in another suit, had, by answer, set up the same case against him that he afterward set up by bill. In the former suit the decree had been against Farquharson, and he afterward sought to renew the litigation by an original proceeding, and it was held properly that the former decree, though between codefendants, was a bar. So in the case of Chamley v. Lord Dunsany, the general litigation was for the settling and marshaling of incumbrances, and it was held that where a case was made out between defendants, by evidence arising from pleadings and proofs between plaintiffs and defendants, a court of equity was entitled to make a decree between the defendants. In this case the decree was between de-

fendants who asserted adverse interests in the incumbered estate. But neither of these cases assert the doctrine maintained here for the appellants, that a court of equity may decree between defendants when neither pleadings nor proofs show any controversy or adverse interest between them. Nor have we been referred to any case which does assert that doctrine."

So it was held by the court, as stated in the syllabus:

"The language of a decree in chancery must be construed in reference to the issue which is put forward by the prayer for relief and other pleadings, and which these show it was meant to decide. Hence, though the language of the decree be very broad and emphatic—enough so, perhaps, when taken in the abstract merely, to include the decision of questions between codefendants—yet where the pleadings, including the prayer for relief, are not framed in the way usual in equity when it is meant to bring the respective claims and rights of codefendants before the court, but are framed as in a controversy between the complainant and defendant chiefly or only, such general language will be held down to these two principal parties alone."

To the same effect is the decision of the Supreme Court of the United States in Barnes v. Railway Co., 122 U. S. 1, 7 Sup. Ct. 1043, 30 L. Ed. 1128, and this has become an established principle, so well settled that it is unnecessary to cite a large number of authorities. It may be sufficient to refer to 23 Cyc. p. 1279, and Gatch v. Simkins, 25 Ohio St. 89, and Koelsch v Mixer, 52 Ohio St. 207, 39 N. E. 417, in which latter case the court said:

"Whilst the exact limits of the doctrine of res judicata in its application to some cases are not definitely settled, it is accepted as generally true that the judgment relied on for that effect in subsequent litigation must have been pronounced upon the same issues, between the same parties, or their privies, standing in an adversary character to one another. By this is not meant that they should have stood upon the record as plaintiff and defendant, but that this should have been their real attitude upon the issues tried and determined."

Two cases are cited to us in which this doctrine is applied to situations precisely similar to that before us. The first is Lincoln National Bank v. Virgin, 36 Neb. 735, 55 N. W. 218, 38 Am. St. Rep. 747, wherein the facts as found by the court were that in a suit by A. against B., the mortgagor, and C., a subsequent mortgagee, to foreclose his mortgage, he alleged that C. had or claimed some lien or interest in the premises but that it was subordinate and junior, and the decree, by default, was "that C. has no right, title or interest in the land in controversy herein." The court held:

"The general rule is that a default is an admission of such facts only as are properly alleged in the petition or complaint. * * * A recognized exception, however, is in a foreclosure or other kindred proceeding in which a defendant, who is called upon to disclose his supposed but unknown interest in the subject of the action by a default, admits his interest to be subordinate to that of the plaintiff. * * * The Merchants' Bank, by its default, must be held to have confessed the cause of action of the plaintiff therein, and to that extent the decree is conclusive. But the question of the validity of the mortgage now under consideration, as a second lien, was not presented by the petition, and the bank, as a defendant in that action, was justified in assuming that * * * the plaintiff was merely seeking to assert his own lien."

It was held that the second mortgage still subsisted as to all persons save the first and foreclosing mortgagee and those in privity with him.

The second case is that of De Roberts v. Stiles, 24 Wash. 611, 64 Pac. 795, by the Supreme Court of Washington. Stiles was the owner of real estate incumbered by two mortgages; one, the junior mortgage, held by the assignee of De Roberts. The senior mortgage was foreclosed; the junior mortgagee being made a party with Stiles. The property was actually sold to the senior mortgagee for the amount of his decree, but under the local law a proceeding to redeem was brought by one Fry, who had purchased the property from Stiles and who obtained title by paying the full amount due on the certificate of sale. The court held that Fry had no greater right as the purchaser from Stiles than Stiles himself, and that Stiles was not in position on the face of the record to contend that the mortgage lien assigned to De Roberts had been extinguished as to any other parties than the complainant in foreclosure and its privies. The same principle controlled the decision in the case of Owensboro v. Westinghouse, etc., Co., 165 Fed. 385, 91 C. C. A. 335, by the Circuit Court of Appeals of this circuit.

These authorities are not in conflict with the cases cited to us by counsel for defendant and decided by the Supreme Court of Ohio. Granting, as contended, that this court would be bound by the decisions of the Supreme Court of Ohio touching the effect of judgments of the courts of the state as affecting title to real property within the state, the cases cited are clearly distinguished from those relied upon by the complainant and followed by us, in that in each case there had been a sale upon foreclosure with confirmation of sale and deed vesting title in another party. Winemiller v. Laughlin, 51 Ohio St. 421, 38 N. E. 111; Pinney v. Bank, 71 Ohio St. 173, 72 N. E. 884. There can be no question but that, if in this case John E. Barnes had bought the property at sheriff's sale and obtained his deed from the court, he would have succeeded to the rights of the Fremont Savings Bank Company and entitled to insist upon the exact terms of the decree, and that the interest of Cady in the property would have been barred. But John E. Barnes in this respect stands in the shoes rather of Charles W. Barnes, who, as we have stated, had no such finding in his favor.

[4] The last question is one of exceeding interest. The rule applicable is thus stated by Mr. Pomeroy (Pomeroy's Equity Jurisprudence, § 797):

"An owner of the fee subject to a charge, who is himself the principal and primary debtor, and is liable personally and primarily for the debt secured, cannot pay off the charge, and in any manner or by any form of transfer keep it alive. Payment by such a person and under such circumstances necessarily amounts to a discharge. The incumbrance cannot be prevented from merging by an assignment taken directly to the owner himself, or to a third person as trustee. This rule applies especially to a mortgagor who continues to be the primary and principal debtor. The rule also applies to a grantee of the mortgagor who takes a conveyance of the land subject to the mortgage, and expressly assumes and promises to pay it as a part of the consideration. He is thereby made the principal debtor, and the land is the primary fund for payment. If he pays off the mortgage it is extinguished."

The principle is reiterated by Pomeroy in sections 1206 and 1213. In section 1206 the author says:

"When the deed executed by the grantor contains a clause sufficiently showing such an intent, the acceptance thereof by the grantee consummates the assumption, and creates a personal liability on his part, which inures to the benefit of the mortgagee as though he had himself executed the deed. When a grantee thus assumes payment of the mortgage debt as a part of the purchase price, the land in his hands is not only made the primary fund for payment of the debt, but he himself becomes personally liable therefor to the mortgagee or other holder of the mortgage. The assumption produces its most important effect, by the operation of equitable principles, upon the relations subsisting between the mortgagor, the grantee, and the mortgagee. As between the mortgagor and the grantee, the grantee becomes the principal debtor primarily liable for the debt, and the mortgagor becomes a surety, with all the consequences flowing from the relation of suretyship. As between these two and the mortgagee, although he may treat them both as debtors and may enforce the liability against either, still, after receiving notice of the assumption, he is bound to recognize the condition of suretyship, and to respect the rights of the surety in all of his subsequent dealings with them."

And in a note to the above written by the author himself it is said:

"Since such grantee thus becomes the principal debtor, primarily and absolutely liable for the debt, when he pays the mortgage it is extinguished completely; when he takes an assignment of it, it is completely merged. He cannot by any form of assignment, legal or equitable, or by subrogation, keep the mortgage alive as against other liens on the land"—citing cases.

And in section 1213:.

"On the other hand, if payment of the mortgage debt is made to the mortgagee or other holder of the mortgage, by a party who is himself personally and primarily liable for the debt, who is in any manner or by any means the actual primary debtor, whose duty it is to pay the debt absolutely, and before all others, such payment operates ipso facto as an end of the mortgage, and the lien is completely destroyed. The party so paying is not subrogated to the rights of the mortgagee; there is no equitable assignment to him of the mortgage security; even if he should receive a formal assignment, the mortgage could not be thus kept alive, but would be wholly merged and ended."

Annotating this doctrine, the author says:

"In this description are included the mortgagor himself, so long as he remains the principal debtor, and has not changed his relations by a conveyance, and also the grantee from the mortgagor who has assumed payment of the mortgage debt, and thus rendered himself the principal and primary debtor therefor."

This principle was recognized by the Supreme Court of Ohio in Joyce v. Dauntz, 55 Ohio St. 538, 45 N. E. 900, wherein relief was granted to one having paid the mortgage debt on the ground that the circumstances showed him not to have been primarily liable but to have paid it to protect his own estate.

To the same effect is Birke v. Abbott, 103 Ind. 1, 1 N. E. 485, 53 Am. Rep. 474, where the doctrine is announced as follows:

"Subrogation takes place only where one has performed the obligations of another, or has paid his own debt, the burden of which has, for a valuable consideration, been assumed by another, or when he has paid incumbrances for the protection of his own title or interests, the payment of which he has not assumed by contract."

To the same effect are Shirk v. Whitten, 131 Ind. 455, 31 N. E. 87; Stastny v. Pease, 124 Iowa, 587, 100 N. W. 482; Lincoln Nat. Bank v. Virgin, supra; Willson v. Burton, 52 Vt. 394; and cases cited in 37 Cyc. 452, 473.

The facts before us seem to bring this case clearly within the authorities cited. The agreement between Charles W. Barnes and John E. Barnes, respecting the consideration for the conveyance of the property, made John E. Barnes primarily liable for the debt to the Fremont Savings Bank Company, and the transaction was one controlled by the settled course of Ohio law. In Thompson v. Thompson, 4 Ohio St. 333, it was held to be a well-settled principle that the purchaser of an incumbered estate, if he agreed to take it subject to the incumbrance and an abatement is made in the price on account, is bound to indemnify his grantor against the incumbrance whether he expressly promised to do so or not; a promise to that effect being implied from the nature of the transaction.

In Brewer v. Maurer, 38 Ohio St. 543, 43 Am. Rep. 436, it is held that the acceptance by a grantee of a deed "containing the clause that the said grantee assumed as part of the purchase money the mortgage debt was an agreement between herself and her grantor to pay the mortgage debt as part payment of the consideration agreed by her to be given for the land. The transaction was not a purchase of the equity of redemption, subject to the mortgage, but of the land in fee with a stipulation as to the manner in which the purchase money agreed upon by the parties should be paid."

In Emmitt v. Brophy, 42 Ohio St. 83, the principle of Thompson v. Thompson, supra, is restated in these words:

"An agreement made on a valid consideration by one person with another, to pay money to a third, can be enforced by the latter in his own name."

Under the agreement between them, as very freely testified to by both of the Barnes brothers on the stand, the payment of the bank's lien by John E. Barnes was an act which he had bound himself to perform for his brother; it was of no other consequence respecting its effect upon the status of the lien when the act was performed than would have followed if Charles W. Barnes, the original obligor, had taken his grantee's consideration and out of it paid off the lien and costs. John E. Barnes simply took the position his brother then occupied with respect to the lien; no one will say that any payment of this lien by Charles W. Barnes would have resulted in a subrogation to him against Cady's claim, and it is obvious from the authorities cited, which are by no means exhaustive, that the only way in which a right in John E. Barnes to either enjoy a subrogation of the bank's lien or to have the advantage of the decree against Cady would be through becoming privy to the bank's interest by way of purchase at a sale upon the decree in favor of the bank. He chose to become privy to the mortgagor rather than the mortgagee, a distinction of controlling significance in this case.

The decree in this case should be for a foreclosure of the lien set up in the complaint.