# OTIS ELEVATOR COMPANY *v.* GEORGE A. FULLER COMPANY.

---

JUDGMENTS; FORMER ADJUDICATION; MASTER AND SERVANT; NEGLIGENCE

1. While in an action by one of two defendants in a former action, against its codefendant in that action to recover the amount of a judgment against it, which it had satisfied, and in which action a verdict was directed for such codefendant, the record and judgment in the former action cannot be successfully pleaded in bar, they are admissible in evidence to show what matters were actually litigated and adjudicated in that action, as to which matters there can be no new inquiry, if the evidence is the same.

2. Where a painter in a building under construction, who was injured by the negligent operation of an elevator, and who was employed by a subcontractor, in an action against the contractor and the elevator company, recovered a verdict and judgment against the contractor on the ground that the operator of the elevator was in the employ of the contractor, but a verdict in favor of the elevator company was directed by the court, it was *held* in a subsequent action by the contractor against the elevator company, after the contractor had paid the judgment, to recover the amount of the judgment so paid, that there could be no new inquiry into the question as to who was the employer of the operator of the elevator at the time of the accident, as that question had been adjudicated in the first action.

3. Where an elevator company, having installed an elevator in a building in course of construction, hires the elevator and the operator of it

---

Note.—As to which of two or more persons is master of a third, see note in 37 L.R.A. 33.

to the building contractor, who assumes control of both, and uses the elevator in the work of completing the building, the contractor is liable for the negligence of the operator in the operation of the elevator, although the operator remains the general servant of the elevator company, and subject to discharge by it; and it is immaterial that the elevator is incidentally and occasionally used to carry passengers for the accommodation of the owner of the building.

No. 2829.   Submitted November 3, 1915.   Decided January 3, 1916.

HEARING on an appeal by the defendant from a judgment of the Supreme Court of the District of Columbia, on verdict, in an action to recover the amount of a judgment paid by the plaintiff.                                    *Reversed.*

The COURT in the opinion stated the facts as follows:

This appeal is from a judgment of the supreme court of the District of Columbia in favor of appellee, the George A. Fuller Company, in an action brought against appellant, the Otis Elevator Company, to recover the amount expended by it in satisfaction of a judgment and costs in an action at law for damages instituted by one McCloskey against the Fuller Company and the Otis Company as joint defendants. In that case, on plaintiff's evidence, the court, without objection from plaintiff McCloskey or the codefendant, the Fuller Company, directed the jury to return a verdict in favor of the Otis Company. The trial resulted in a judgment against the Fuller Company, which it seeks in this action to recover from its codefendant, the Otis Company. From the original judgment the Fuller Company appealed to this court (35 App. D. C. 595), where the judgment was affirmed. Writ of error was then taken to the Supreme Court of the United States (228 U. S. 194, 57 L. ed. 795, 33 Sup. Ct. Rep. 471), where the judgment was again affirmed.

The facts in the original case are succinctly stated in the opinion of Mr. Justice Robb, as follows:

"The defendant company contracted with William B. Hibbs to erect for him an office building on Fifteenth street in this

city.  The work was to be completed by a time certain.  This contract did not include the installation of an elevator.  That work was provided for in a contract between Hibbs and the Otis Elevator Company.  The elevator company installed its elevator long before the completion of the building.  This elevator, down to the time of the injury to the plaintiff, had not been turned over to the owner of the building, but was operated by an employee of the Otis Company, who was paid and generally controlled by that company.  After its installation the defendant company entered into an arrangement with the elevator company by which it became entitled to use this elevator in the prosecution of its work, paying to the elevator company $3 per day, which was to cover the wages of the caretaker or operator aforesaid, the Otis Company reserving the primary right to use the elevator.  Under this arrangement the defendant company was to have no control over the elevator operator, other than to notify him when to start and when to stop his machine.

"The defendant company entered into a subcontract with the Robert E. Mackay Company, of New York, for the painting required by its contract with Mr. Hibbs.  The plaintiff was an employee of the Mackay Company.  The elevator shaft was included in this subcontract.  To paint this it was, of course, necessary that some means be provided whereby workmen could ascend and descend the shaft.  Therefore the Mackay Company entered into an agreement with the defendant company by which the defendant company agreed to furnish the Mackay Company, for use in painting said shaft, elevator, power, and operator at any time that the elevator company or the defendant company did not want them.  Nothing whatever was said about the arrangement between the elevator company and the defendant company, the agreement between the Mackay and the defendant company proceeding upon the theory that the equipment and elevator were under the control of the defendant company.  The Mackay Company was not to have, and in fact did not have, any control over the operator other than to direct him when to start and when to stop his elevator while thus temporarily used as a movable staging.

"Upon the day of the accident, plaintiff and another workman were on the roof of the elevator, touching up the walls of the shaft. They had worked down until the floor of the car was on a level with the first floor of the building. To finish the walls of the shaft between the first and second floors of the building, the space then occupied by the body of the car, it became necessary to get under the car. To do this it was necessary for the painters to be taken to the next or second floor landing. The plaintiff was standing on the rim or ledge around the top of the car, and facing the center of the car. He had a paint box and brush in his hands. The other painter was on another side of the top, with his back to the plaintiff. This rim or ledge was about $6\frac{1}{2}$ inches wide. Plaintiff called to the elevator operator to take him and the other painter up to the second floor, and let them off there. There was evidence before the jury that when the car had reached a point where plaintiff had directed that it be stopped, the car paused and suddenly started again, throwing plaintiff off his balance, which he was unable to regain until the car had reached the fifth floor, where he was caught in the weights which passed the car at that point."

When the taking of testimony was concluded, defendant moved the court to instruct the jury to return a verdict in its favor. This instruction was refused. The case was submitted to the jury, with a verdict and judgment thereon for plaintiff, the Fuller Company.

*Mr. Frederic D. McKenney* and *Mr. John S. Flannery* for the appellant.

*Mr. Edward S. Duvall, Jr.,* for the appellee.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

Defendant, Otis Company, for a fourth plea to the declaration, set up the record and judgment in the former suit as a bar to plaintiff's right to recover. In support of this plea,

it urged that the judgment in its favor, when sued jointly with the Fuller Company by McCloskey, is a bar to this action. We are not impressed with this contention. In the original suit, McCloskey controlled the evidence. He was satisfied to make out a case against one of the defendants. Defendants were not adversary litigants in the sense that they could try out an issue of liability between themselves in that action. For example, the Otis Company might have indemnified the Fuller Company against the very thing that happened, which would be determinative of this case, but not material in establishing the liability of the Fuller Company to McCloskey. Indeed, McCloskey might have sued the Fuller Company separately, or, having sued them jointly, might have dismissed the case as to the Otis Company, and it would hardly be held that a judgment against the Fuller Company under those circumstances would operate as a bar to the subsequent action for indemnity. If the Fuller Company has a cause of action in the present suit, the way was not open for it to secure an adjudication of that right in the original case. The rule seems to be general that, in actions for indemnity between joint defendants, the original record and judgment will not constitute a valid plea in bar. *Owensboro* v. *Westinghouse, C. K. & Co.* 91 C. C. A. 335, 165 Fed. 385; *Pullman Co.* v. *Cincinnati, N. O. & T. P. R. Co.* 147 Ky. 498, 144 S. W. 385; *Oceanic Steam Nav. Co.* v. *Compania Transatlantica Espanola,* 134 N. Y. 461, 30 Am. St. Rep. 685, 31 N. E. 987; *Churchill* v. *Holt,* 127 Mass. 165, 34 Am. Rep. 355; *King* v. *Chase,* 15 N. H. 9, 41 Am. Dec. 675; *O'Connor* v. *New York & Y. Land Improv. Co.* 8 Misc. 243, 28 N. Y. Supp. 544.

But while the plea of *res judicata* cannot be sustained in the present action, the main points essential to recovery here were adjudicated in the original suit on substantially the same evidence as that upon which the Fuller Company now pitches its case. In so far as these matters were disposed of in the former case, plaintiff will be estopped to invoke their aid here. Where there is a second action upon a different claim or demand between parties to the former suit, involving issues there

adjudicated, the judgment in the prior action will operate only as an estoppel as to those matters in issue or points controverted upon which the finding or verdict was rendered, in so far as they bear upon the issues in the second action. "In all cases, therefore, where it is sought to apply the estoppel of a judgment rendered upon one cause of action to matters arising in a suit upon a different cause of action, the inquiry must always be as to the point or question actually litigated and determined in the original action, not what might have been thus litigated and determined. Only upon such matters is the judgment conclusive in another action." *Cromwell* v. *Sac County,* 94 U. S. 351, 24 L. ed. 195. Thus, while the former judgment is not *res judicata,* either as to all matters in issue, or as to those matters which might have been put in issue, plaintiff is estopped upon the same evidence to again put in issue any matters essential to recovery here which, upon issue joined to which it was a party, were adjudicated in the prior action.

This brings us to the consideration of the matters here in issue which were in issue and adjudicated in the former action. This case turns upon the scope of the contract between the Otis Company and the Fuller Company for the use by the latter of the elevator and the operator Locke. In the former case, Mr. Justice Robb, speaking for the court, said: "At the trial of the case the court, without objection on the part of the plaintiff, directed a verdict in favor of the elevator company, the other of the two defendants, there being no evidence to charge that company with any responsibility in the premises." Mr. Justice Hughes, speaking for the Supreme Court of the United States, in relation to the same matter, said: "In the present case, the Fuller Company obtained the use of the elevator, and the operator, from the Otis Company, and paid therefor. But the Otis Company had nothing to do with the arrangement with the Mackay Company. To this transaction, and to the employing of the top of the elevator as a movable platform for the painters, the Otis Company was a stranger. The Fuller Company, having obtained the use of the elevator, agreed to supply

it to the Mackay Company, and undertook to furnish that company with the necessary service in operating it; it asserted control for this purpose, and assumed the duty of operating with proper care."

The evidence touching the agreement between the Otis Company and the Fuller Company relative to the use of the car is substantially the same as in the prior case. There they were jointly charged with negligence. The nature of the agreement for the use of the car was gone into fully for the obvious purpose of fixing responsibility, and especially to determine whose servant Locke, the operator, was at the time of the accident. In the present case, a studious attempt has been made on the part of the Fuller Company to qualify the evidence given by its employees in the prior case by asserting that it contracted with the Otis Company for "elevator service," instead of for the hiring of the car, equipment, and operator outright. If this were now an open question, the nature of the contract would have to be determined from the facts, and not from any characterization which the Fuller Company might choose to place upon it.

We now come to the crucial issue in both cases,—Whose servant was Locke, the operator, at the time the accident occurred? Again we are remanded to the former case. In the opinion of this court, Mr. Justice Robb said: "It is insisted that 'it was error in the trial court to decide as matter of law, under all the evidence, that Locke (the elevator operator) was the servant of the Fuller Company.' This assignment of error goes to the root of the case. It is conceded that there was no conflict in the evidence upon the facts relating to Locke's employment. It therefore was the sole province of the court to determine to whom Locke sustained the relation of employee at the time the accident occurred. In other words, it was a question of law, and not of fact. Did the court err? We think not. So far as this inquiry is concerned, the elevator company may be eliminated from consideration." This view was sustained by the Supreme Court in the following language: "The principal argument for reversal is based on the ruling of the trial

court that Locke, the operator of the elevator, was the servant of the Fuller Company. The court below approved this ruling, and we find no error in its conclusion. So far as Locke's employment was concerned, there was no dispute as to any matters of fact, and the question of the liability of the Fuller Company for his negligence, if he was negligent in the operation of the elevator, was one of law."

With the status of Locke fixed in the prior case as the servant of the Fuller Company, based upon the further adjudication that the Fuller Company hired the use of the elevator and Locke, the operator, outright, the Fuller Company is estopped by that judgment now, upon the same evidence there adduced, to shift its position in a suit for indemnity against its codefendant. The matters thus adjudicated in the former case lie at the root of the right to recover here. It is clear, therefore, that, with these matters foreclosed by the former adjudication, the foundation for the present suit is left too weak to support a right of recovery by the Fuller Company.

It having been settled that the Otis Company turned over the elevator and the operator to be used by the Fuller Company, it follows that it did not retain such control as would make it primarily liable for the accident which befell McCloskey. Eliminating the Mackay Company from responsibility, as was done in the former case, and with which we are not here concerned, we have a situation closely analogous to that presented in the case of *Byrne* v. *Kansas City, Ft. S. & M. R. Co.* 24 L.R.A. 693, 9 C. C. A. 666, 22 U. S. App. 220, 61 Fed. 605. In that case, the railway company rented its engine and crew to the Kansas City & M. R. & Bridge Company. The bridge company controlled the bridge and the operation of all trains of a number of railway lines over the bridge. The bridge company paid the railway company for the use of the engine $10 per day, and also paid the railway company the expense of fuel and supplies used in running the engine and the wages of the engineer and fireman, who were carried on the pay rolls of the railway company. The accident happened through the negligence of the engineer in operating the engine. The question

was squarely presented whether the contract by which the railway company rented its engine and crew to the bridge company relieved it from liability for negligence in the operation of the engine while in the service of the bridge company.

On this state of facts, Judge Taft, speaking for the circuit court of appeals, said: "We are clearly of the opinion that the court was right in holding that the railway company was not responsible for the acts of the engineer and fireman in running the engine which killed Nason. They were, it is true, general servants of the railway company, but at the time of the accident they were engaged in the work of the bridge company, were subject to the orders of the bridge company's officers, and in what they did or failed to do were acting for the bridge company. The question is one of agency. The result is determined by the answer to the further questions, Whose work was the servant doing? and, Under whose control was he doing it? The railway company had simply lent its general servants to become special or particular servants of the bridge company, had for the time parted with control over them, and was not responsible for their acts while in the service and under the control of their temporary master." This rule is well supported by both English and American cases. *Donovan* v. *Laing, W. & D. Constr. Syndicate* [1893] 1 Q. B. 629, 4 Reports, 317, 63 L. T. N. S. 512, 41 Week. Rep. 455, 57 J. P. 583; *Rourke* v. *White Moss Colliery Co.* L. R. 2 C. P. Div. 205, 46 L. J. C. P. N. S. 283, 36 L. T. N. S. 49, 25 Week. Rep. 263; *Powell* v. *Virginia Constr. Co.* 88 Tenn. 692, 17 Am. St. Rep. 925, 13 S. W. 691; *Miller* v. *Minnesota & N. W. R. Co.* 76 Iowa, 655, 14 Am. St. Rep. 258, 39 N. W. 188; *Gahagan* v. *Aermotor Co.* 67 Minn. 252, 69 N. W. 914, 1 Am. Neg. Rep. 92; *Clapp* v. *Kemp,* 122 Mass. 481.

In *Donovan* v. *Laing, W. & D. Constr. Syndicate, supra,* where defendant had rented a crane and operator to another company to be used in loading a ship at a wharf, discussing the question of primary liability, Lord Esher said: "In this case the crane and the man to work it were lent by the defendants to Jones & Company for a consideration, and to be used

in the manner I have described. For some purposes, no doubt, the man was the servant of the defendants. Probably, if he had let the crane get out of order by his neglect, and, in consequence, anyone was injured thereby, the defendants might be liable; but the accident in this case did not happen from that cause, but from the manner of working the crane. The man was bound to work the crane according to the orders, and under the entire and absolute control, of Jones & Company. That being so, whose servant was the man in charge of the crane as to the working of it? It is true that the defendants selected the man and paid his wages, and these are circumstances which, if nothing else intervened, would be strong to show that he was the servant of the defendants. So, indeed, he was as to a great many things; but as to the working of the crane he was no longer their servant, but bound to work under the orders of Jones & Company, and if they saw the man misconducting himself in working the crane, or disobeying their orders, they would have a right to discharge him from that employment. This conclusion hardly requires authority, but there is authority for it, without going back to an earlier date, in the case of *Rourke* v. *White Moss Colliery Co.* L. R. 2 C. P. Div. 205, 46 L. J. C. P. N. S. 283, 36 L. T. N. S. 49, 25 Week. Rep. 263."

In the *Rourke Case,* Chief Justice Cockburn stated the rule as follows: "When one person lends his servant to another for a particular employment, the servant, for anything done in that particular employment, must be dealt with as the servant of the man to whom he is lent, although he remains the general servant of the person who lent him." This rule was quoted with approval by Mr. Justice Lurton in *Powell* v. *Virginia Constr. Co.* 88 Tenn. 692, 17 Am. St. Rep. 925, 13 S. W. 691.

It is contended, however, that the Fuller Company had no power to discharge Locke, and therefore it cannot be held liable for his conduct. The rule of liability in cases of this sort depends upon control of the actions of the servant. In this case, it is true that Locke operated the elevator, just as the

engineer operated the engine, or the man operated the crane; but when and where to operate was within the control of the Fuller Company. Here, the elevator moved upon a fixed track, as did the engines in the railway cases. Undoubtedly, if the accident had been occasioned by a defect in the elevator, we would have a different case; but the accident was caused by the movement of the elevator, a matter within the control of the Fuller Company.

The learned justice below indicated in a colloquy with counsel that he regarded the present case controlled by what is known as the carriage cases. It is undoubtedly settled that where one hires a carriage, horse, and driver for a given purpose, and exercises no more control over the driver than to indicate where he desires to be taken or by what route he wishes to be conveyed to his destination, he cannot be held liable for the negligence of the driver. But, as indicated by Mr. Justice Field, in *Little* v. *Hackett,* 116 U. S. 366, 29 L. ed. 652, 6 Sup. Ct. Rep. 391, this rule has no application where the master has given over to another the control of his servant. The distinction is clearly pointed out by Lord Bowen in *Donovan* v. *Laing, W. & D. Constr. Syndicate, supra,* as follows: "The principal part of the argument for the plaintiff was founded on what may be called the carriage cases,—*Laugher* v. *Pointer,* 5 Barn. & C. 547, 8 Dowl. & R. 550, 4 L. J. K. B. 309, and *Quarman* v. *Burnett,* 6 Mees. & W. 499, 9 L. J. Exch. N. S. 308, 4 Jur. 969; but they really have nothing to do with the point presented in this appeal. If a man lets out a carriage on hire to another, he in no sense places the coachman under the control of the hirer, except that the latter may indicate the destination to which he wishes to be driven. The coachman does not become the servant of the person he is driving, and if the coachman acts wrongly, the hirer can only complain to the owner of the carriage. If the hirer actively interferes with the driving, and injury occurs to anyone, the hirer may be liable, not as a master, but as the procurer and cause of the wrongful act complained of. In the present case the defend-

ants parted for a time with control over the work of the man in charge of the crane, and their responsibility for his acts ceased for a time."

Here the control of the movement of the elevator was wholly with the Fuller Company. It took over Locke, the operator, with the elevator. It assumed control of both. It was not a mere temporary use, like the hiring of a carriage for a single trip. The record discloses that the Fuller Company had been using the elevator for more than a month (frequently overtime) when the accident happened, and that it had sublet it to the Mackay Company, a use not contemplated in its agreement with the Otis Company. We think, therefore, in view of the adjudicated facts, which were not open to the consideration of a second jury, there was not such primary liability on the part of the Otis Company as will support an action for indemnity.

Some stress is laid upon the meager testimony to the effect that passengers were occasionally carried on this elevator at and about the time this accident occurred. The only reasonable inference to be drawn from the evidence is that this service was rendered for the accommodation of the owner of the building. It does not appear that it entered into the contract for the use of the elevator. It follows, therefore, that the elevator was not being operated at this time primarily for the carrying of passengers, and incidentally for the completion of the building; but primarily for the completion of the building, and incidentally for the carrying of passengers. In other words, the passengers were carried for the accommodation of the owner of the building, and this was done by whoever happened to be in control of the elevator. The contention is of no importance.

The judgment is reversed, with costs, and the cause is remanded for further proceedings not inconsistent with this opinion.                                    *Reversed and remanded.*

On application of the appellee, the Supreme Court of the United States, on April 18, 1916, granted a writ of certiorari, and the writ was issued and return made April 21, 1916.