third cause of action, because plaintiff did not allege that he used reasonable diligence to obtain other employment. We do not think this contention can be supported. The motion was directed to excluding all testimony bearing on the cause of action. Even though plaintiff might not be entitled to recover all he claimed, this should not preclude him from proving any damages. Nor do we understand the rule of pleading to require that plaintiff must allege affirmatively that he endeavored to make the damages as light as possible. Costigan v. Railroad Co., 2 Denio, 616. And in Howard v. Daly, 61 N. Y. 362, it is said:

"Prima facie, the plaintiff is damaged to the extent of the amount stipulated to be paid. The burden of proof is on the defendant to show either that the plaintiff has found employment elsewhere, or that other similar employment has been offered and declined, or at least that such employment might have been found. I do not think that the plaintiff is bound to show affirmatively, as a part of her case, that such employment was sought for and could not be found." 2 Greenl. Ev. §§ 261, 262; Costigan v. Railroad Co., 2 Denio, 609.

The case of Fuchs v. Koerner, 107 N. Y. 529, 14 N. E. 445, relied on by appellant, in no way militates against, but rather enforces, the views herein expressed.

We think the judgment should be affirmed, with costs. All concur.

(7 App. Div. 301)

McSWEGAN et al. v. PENNSYLVANIA R. CO.

(Supreme Court, Appellate Division, First Department. June 29, 1896.)

CARRIERS OF GOODS—WRONGFUL DELIVERY—RATIFICATION.

Plaintiffs consigned to themselves, and retained, the bill of lading for goods of which they had made an executory contract of sale; the goods to be delivered to the buyer only on compliance with certain conditions precedent. When the goods reached the destination, defendant carrier improperly delivered them 'to the buyer. *Held*, that plaintiffs did not ratify such delivery by corresponding with the buyer in reference to the subject of · payment, where they never assented to the delivery, and shortly afterwards called· defendant's attention to the matter, and insisted all· the time on the liability of defendant. 37 N. Y. Supp. 943, reversed.

Appeal from trial term, New York county.

Action by Frank McSwegan and others against Pennsylvania Railroad Company for conversion of a steam engine. From an order denying a motion for a new trial, made on the minutes after a direction dismissing the complaint (37 N. Y. Supp. 943), plaintiffs appeal. Reversed.

Argued before VAN BRUNT, P. J., and WILLIAMS, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

J. S. Davenport, for appellants.
H. G. Ward, for respondent.

PATTERSON, J. In June, 1893, the plaintiffs were the owners of a certain steam engine and appliances, which were delivered into the possession of the defendant, a common carrier, to be transported from Massillon, Ohio, to Beverly, N. J. The merchandise was con-

signed to the plaintiffs, who held the bill of lading, and who were alone entitled to receive the goods on their arrival at Beverly from the carrier. The plaintiffs made an executory contract of sale of this same machinery to an electrical company doing business at Beverly, but they were not to deliver the same except upon certain conditions precedent to such delivery to be complied with by the electrical company. The defendant improperly gave the possession of the machinery to the electrical company, and it is not disputed that by so doing they converted the plaintiffs' property, and became liable for that conversion. It appears that on or about the 15th day of June, the plaintiffs, upon learning that the electrical company had possession of the machinery, entered into correspondence by telegram and by letter with reference to the subject of payment, but in all the correspondence there is nothing which recognizes the wrongful delivery made by the defendant, and it relates merely to efforts to secure payment for the machinery, or a compliance with the terms upon which the original executory contract was made. In the same month of June, Frank McSwegan, one of the plaintiffs, went to the office of the defendant, and informed them that the goods had been delivered, and asked them to look into it. Subsequently, and as late as February, 1896, the plaintiffs made application to the electrical company for payment of the bill for the machinery, which was never paid. It also appeared that persons were sent by some one, with the plaintiffs' knowledge, to adjust the machinery in operation at the electrical company's works. The plaintiffs' witness swore, in substance, that the person was not sent by plaintiffs. It further appeared that in August, 1893, the plaintiffs, through their attorneys, notified the Pennsylvania Railroad Company of the claim made upon it by the plaintiffs, substantially for the conversion of the machinery. At the close of the plaintiffs' case the defendant moved to dismiss the complaint on several grounds, and, among others, because the proof showed that the plaintiffs acquiesced in the delivery to the electrical company; secondly, because the plaintiffs cannot at the same time demand payment for the engine from the electrical company and sue the defendant in conversion for its value, and because the conduct in leaving the engine with the electrical company without any demand for its return, and acquiescing in its delivery, deprived the plaintiffs of the right to replevy it on the ground that no title passed from the plaintiffs to the defendant. The trial judge granted the motion to dismiss the complaint, but entertained a motion for a new trial, which he took into consideration, and subsequently denied, and from the judgment dismissing the complaint and the order denying the motion for a new trial this appeal is taken.

It is not, and cannot be, disputed that when the defendant delivered the machinery and appliances to the electrical company it became immediately liable to the plaintiffs in an action for conversion. The question in the case is whether the plaintiffs have deprived themselves of the right to enforce the cause of action which had accrued against the defendant. Such a deprivation could only result from either a waiver of the right by an adoption of the delivery,

or from such conduct on the part of the plaintiffs as would constitute an estoppel against the enforcement of that right. That there was no actual waiver is clear. The plaintiff never assented to the delivery of the machinery to the electrical company. Shortly after learning what disposition the defendant had made of the property, the attention of the officers of the defendant was called by the plaintiffs to the misdelivery, and again, in August, 1893, the attorneys' letter was written to the defendant concerning the matter. The plaintiffs were insisting all along on their right to look to the defendant. The learned judge in the court below based his decision of the motion for a new trial on the ground that the plaintiffs had ratified the unauthorized act of the carrier by treating the electrical company as the purchaser to whom delivery had properly been made, but we fail to interpret the evidence on this subject as the learned judge did. All that the plaintiffs did with reference to the matter was that, finding that their property had wrongfully come into the possession of the electrical company, they concluded to recognize the situation, provided the terms of the executory contract should be complied with. They did not relinquish their claim against the defendant, nor were they in any sense put to an election. They were content to receive payment, and avoid trouble and litigation, if the electrical company would comply with its contract; but they steadfastly adhered to their claim against the defendant by the notification given in June and by the attorneys' letter written in August. All that took place between the plaintiffs and the electrical company was matter of negotiation, which resulted in nothing. It was not a ratification of the defendant's act; it was merely an effort to do the best they could under the situation of the machinery as it then was. That did not relieve the defendant from responsibility nor condone the conversion. None of the cases hold that a simple demand for the goods or their value amounts to a ratification of a wrongful delivery. An adoption might be inferred from the conduct of the plaintiffs respecting their dealings with the machinery after it came into the possession of the Beverly Company by interfering with it and repairing it, and endeavoring to put it in condition to meet the requirements of the officers of the Beverly Company, who would thereby be recognized as entitled to demand the performance of a duty from the plaintiffs. That would necessarily involve the recognition of the Beverly Company's right to the possession of the machinery; but upon that subject the evidence is not conclusive, as the learned judge in the court below evidently regarded it. The plaintiffs had procured this engine from the manufacturers in Wisconsin, and the testimony of the witness McSwegan was to the effect that whoever went to Beverly for the purpose of examining and repairing the machinery was sent by the manufacturers, and that the plaintiffs had really no control over or connection with that subject. The plaintiffs were entitled to go to the jury on that question, instead of which the court determined that the person sent to Beverly to look after the machinery was the agent of the plaintiffs for that purpose, and that from thence it might be inferred that the plaintiffs had assented to the machinery being in the possession of the

Beverly Company under a completed delivery binding upon them.

There is no question of estoppel in the case. In order to establish one, it was necessary to show that the position of the Pennsylvania Railroad Company had been changed to its detriment by some act or acquiescence of the plaintiffs. Nothing of that kind appears in the evidence. It is not set up in the answer that the Pennsylvania Railroad Company or its agents ever paid the slightest attention to the subject after notice of the misdelivery was given to it. Nor does it appear in the evidence that in any way the position or situation of the defendant was changed respecting this engine and machinery. It was not prevented from making a claim upon the Beverly Company, nor, from all that appears, did it ever contemplate making such a claim; but it remained supine from the beginning of the transaction down to the trial of the cause.

The order appealed from should be reversed, and a new trial ordered, with costs to abide the event. All concur.