### A. D. BLOWERS & CO. v. CANADIAN PAC. RY. CO.

(Circuit Court, W. D. Washington, N. D. July 13, 1907.)

#### No. 1,387.

1. CARRIERS—WRONGFUL DELIVERY—LIABILITY FOR CONVERSION.

A carrier or a warehouseman is liable in trover for the wrongful delivery of goods intrusted to it for shipment or storage; but such right of action may be waived by any action which ratifies the delivery, and thereby deprives the carrier or warehouseman of the right to recover over against the person to whom the delivery was made.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 9, Carriers, § 361.]

**2. SAME—RATIFICATION BY SHIPPER.**

Plaintiff delivered to defendant railroad company a shipment of apples covered by bills of lading with drafts upon the consignee attached. Defendant delivered the apples without collecting the drafts, and on learning such fact plaintiff entered into correspondence with the consignee and obtained part payment and the consignee's acceptances for the remainder. *Held*, that the effect of such action was to ratify the delivery and pass title to the apples to the consignee, which precluded plaintiff from recovering from the defendant for conversion.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 9, Carriers, § 361.]

At Law. Trial to the court without a jury.

Jesse A. Frye, for plaintiff.
Thomas B. Hardin, for defendant.

WHITSON, District Judge. In this case a jury has been waived and it comes up for trial on an agreed statement of facts. In 1905 the plaintiff entered into a contract with J. E. Chipman for the sale and delivery of certain apples for shipment to Australia. The contract consisted of a letter stating the terms, written by Chipman on March 9th of that year, which was modified in one or two minor particulars by subsequent correspondence. The apples were shipped in various lots. Those shipments over which this controversy arose were carried by the Western Steam Navigation Company from Seattle to Vancouver on the steamer Ramona, and were consigned to Chipman at the last-named place. As shipments were made, drafts were drawn by plaintiff upon Chipman, with bills of lading attached. The shipping receipts contained these words: "Draft on bill of lading." The consignments were received by defendant at one of its docks in Vancouver, together with the shipping receipts, and were thereafter shipped to Australia on one of its steamers at the request of Chipman, with notice of and without the surrender of the bills of lading or the payment of the drafts. Plaintiff sues for conversion, on the ground that the defendant violated its duty in the premises as a common carrier and warehouseman.

A carrier is liable in trover for the wrongful delivery of goods intrusted to it for shipment, and the same rule applies to a warehouseman. 6 Cyc. pp. 468, 469; 28 Amer. & Eng. Encyc. p. 665; 15 Amer. & Eng. Encyc. pp. 1111, 1112. Judgment must go against defendant, therefore, unless something has occurred since its conversion of the property to excuse its dereliction. After the apples had been delivered to Chipman, it having come to the notice of the plaintiff, it entered into correspondence with him, and on November 22, 1905, through the Imperial Bank of Canada, it received part payment from him and took his acceptance on 35 days' time for the balance of the purchase price. This, it is alleged, was a waiver of the right to look to defendant for reimbursement, which is the sole question in the case.

In McSwegan et al. v. Pennsylvania R. R. Co., 40 N. Y. Supp. 51, cited by counsel for plaintiff, this significant language is found:

"It appears that on or about the 15th day of June the plaintiffs, upon learning that the electrical company had possession of the machinery, entered into correspondence by telegram and by letter with reference to the subject of payment; but in all the correspondence there is nothing which recognizes the wrongful delivery made by the defendant, and it relates merely to efforts to

secure payment for the machinery or a compliance with the terms upon which the original executory contract was made." Page 52.

Again (page 53):

"All that took place between the plaintiffs and the electrical company was matter of negotiation, which ended in nothing. It was not a ratification of the defendant's act. It was merely an effort to do the best thing they could under the situation of the machinery as it then was. That did not relieve the defendant from responsibility, nor condone the conversion. None of the cases hold that the simple demand for the goods or their value amounts to a ratification of a wrongful delivery."

The rule is well settled that such an unauthorized act may be ratified. 28 Amer. & Eng. Encyc. p. 739; 15 Amer. & Eng. Encyc. pp. 1111–1113; 5 Amer. & Eng. Encyc. pp. 230, 231. As to what constitutes a waiver or ratification depends upon the particular facts of each case. The transaction between these parties, analyzed to its ultimate, is this: The plaintiff, after having discovered that the apples had been wrongfully delivered to Chipman, had one of four remedies: (1) It could have relied upon the liability of the defendant, and ignored Chipman and his possession of the apples altogether. (2) It could have sued for the possession of the apples which had wrongfully come into Chipman's hands. (3) It could have sued Chipman for conversion. (4) It could have waived the tort and sued Chipman for the purchase price, or, perhaps, for the reasonable value. It did waive the tort by accepting part payment of the purchase price, taking what was in effect Chipman's note for the balance, and extending the time. The effect of this was to transfer the title of the apples to Chipman. After that transaction it could neither recover the apples nor sue for conversion, and its only remedy as against Chipman was to rely upon a sale which had become fully consummated. However the plaintiff should deal with the matter, in any event it was bound by the fact that a sale and delivery had been made, and that it must rely upon an executed contract. If, then, the plaintiff could not have asserted its right to possession as against the defendant, and if it could not sue Chipman for conversion, it cannot sue the defendant for the same thing, because it has ratified the wrongful act of the defendant by dealing with Chipman beyond the mere demand for payment, which has never been held to amount to ratification, for that is in the interest of both parties.

The authorities cited by plaintiff are cases which recognize the doctrine that there can be such a waiver as to relieve a shipper from liability; but in the particular instances such acts were not disclosed as did relieve from it. The acts here were all done prior to any claim being made against the defendant, which put it in a situation where it could not avail itself of any adequate remedy by way of protection. The plaintiff cannot put the defendant in a position which deprives it of a remedy for recouping its loss, and yet compel it to pay that loss. If, after the settlement made with Chipman, the defendant had sued him for possession or for the value of the apples, he could have successfully defended, upon the ground that he had made part payment, had given his note for the balance, and that the title thereby passed to him. Upon discovering the situation, plaintiff was put to its election; and it made that election, which precludes it from asserting that against the

defendant which it could not assert against Chipman. In other words, a defense good as between Chipman and plaintiff must be good as between plaintiff and defendant; for, if the plaintiff ratified the wrongful delivery by dealing with it as the lawful possession of Chipman, then it waived the right to recover of the defendant, for it can claim no greater liability against the defendant than against Chipman. The facts as stipulated by the parties constitute a ratification, which precludes a recovery in this action. Converse v. Railroad Co., 58 N. H. 521; Southern Ry. Co. v. Kinchen et al., 29 S. E. 816, 103 Ga. 186.

Defendant is entitled to a judgment of dismissal.