# JOHN K. CULVER

## *vs.*

## SAMUEL E. NICHOLS.

*Agency—Apparent Authority—Evidence—Declarations of Other Agent—Similar Transactions.*

On an issue as to whether one to whom defendant had sold a number of suburban lots, out of a tract of land in course of development by defendant, had, in view of the circumstances, including the grant of permission to use defendant's branch office near the property, apparent authority to represent defendant for the purpose of sales and receipt of purchase money, *held* that the evidence was sufficient to go to the jury.

pp. 452-453

An agent cannot, by unauthorized statements as to the agency of another person for the same principal, subject the latter to liability for the acts of such other person.     p. 452

That, after one, who had contracted to purchase lots from defendant, and had resold three of such lots, with a contract with each purchaser to build a house thereon, defaulted in his contracts as to the houses, defendant built houses for two of the purchasers and repaid them the amounts previously paid by them to the defaulting contractor, did not show that such contractor was the agent of defendant, so as to impose liability on the latter for sums paid to such contractor by the third purchaser on account of the house to be built for him.

pp. 452, 453

That defendant, while denying liability to plaintiff for the acts of another, offered to take measures looking to the possible reimbursement of plaintiff for the loss caused by such other's acts, did not show that such other was his agent.     p. 453

The question whether the act of an alleged principal is a ratification of a supposed agency depends upon his intention, and when the act relied on to show ratification is equally consistent with a purpose to the contrary, an intent to ratify is not ordinarily implied.     p. 453

*Decided January 27th, 1922.*

Appeal from the Baltimore City Court (DAWKINS, J.).

Action by Samuel E. Nichols against John K. Culver. From a judgment for plaintiff, defendant appeals. Reversed.

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, URNER, STOCKBRIDGE, ADKINS, and OFFUTT, JJ.

*Jacob S. New,* with whom were *Julius H. Wyman* and *Sidney A. Goodman* on the brief, for the appellant.

*Wendell D. Allen,* with whom was *Edward H. Burke* on the brief, for the appellee.

URNER, J., delivered the opinion of the Court.

On July 1st, 1919, the appellant, John K. Culver, who was engaged in the business of developing and selling real estate, entered into a contract with a certain LeRoy A. Shay for the sale to the latter of ten lots of ground near Hamilton in the suburbs of Baltimore. The price of the lots was $350 each, making a total of $3,500 for the ten lots purchased. It was stipulated that the purchaser should erect within six months "on every adjacent two lots" a cottage conforming to plans and specifications which were made a part of the contract, and that, upon completion of all or any of the cottages, the appellant should convey the lots so improved to the purchaser, and lend him $3,000 on each house, and should take a mortgage thereon for $3,700 to secure the amount so loaned and the price of the two lots upon which the cottage was erected. Early in August, 1919, Shay contracted to sell one of the houses, when completed, to the appellee for the sum of $4,866. A preliminary payment of $500 was required, and the receipt given for it states that $300 additional was to be paid at the completion of the house, and the balance in monthly installments of designated amounts. The receipt was signed: "LeRoy A. Shay, in agreement with John K. Culver." At

the same time a promissory note for $500, payable three months after date, was signed by Shay, and delivered to the appellee with a memorandum on it to the effect that it was to be null and void if the house which he had contracted to buy should be accepted by him on its completion. Before the construction of the foundation walls was begun, Shay abandoned the work and disappeared. None of the money paid to Shay by the appellee was received by the appellant.

This suit charges the appellant with liability for the repayment to the appellee of the amount paid on account of his ineffectual purchase. The theory of the asserted responsibility is that, in contracting to sell the property to the appellee and receiving a partial payment of the purchase price, Shay was permitted to act ostensibly as the appellant's agent. A verdict for $500 was rendered in the appellee's favor, and the appeal is from the ensuing judgment.

One of the exceptions reserved at the trial was taken to the refusal of the court to withdraw the case from the jury on the ground that there was no evidence legally sufficient to prove that Shay had any authority, express or implied, to bind the defendant in the transaction on account of which the plaintiff made the payment now sought to be recovered. This ruling, we think, was proper. The question was not whether Shay was in fact authorized to act as the defendant's agent, but whether he was invested with apparent authority to represent the defendant as his agent for the purposes of the contract of sale and receipt of purchase money with which the suit is concerned. *Brager* v. *Levy,* 122 Md., 554. The transaction with the plaintiff occurred at a branch office of the defendant at Hamilton, his main office being in the city. On the signs displayed at the Hamilton office no other name than that of the defendant appeared. The office was in charge of an agent of the defendant by the name of Jerome Norwood, and was allowed to be used also by Shay for the sale of lots of which the defendant was the record owner. There was nothing to indicate that Shay was there for that purpose

otherwise than as the defendant's representative. When the
plaintiff called at the office with a view to the purchase of a
cottage, Mr. Norwood showed him the plans, and informed
him of the price of the house which he afterwards contracted
to buy, and referred him to Shay for the further purposes of
the transaction. In front of the office in which the confer-
ences with Norwood and Shay were held was a blackboard on
which, under the caption: "John K. Culver's Specials," was
the announcement: "Houses and Lots $4,866.00." The sale
to the plaintiff was for the price mentioned in that advertise-
ment. The receipt for the $500 payment recited that it was
on account of the purchase of property in the defendant's
"West Hamilton Addition," and the promissory note for the
repayment of the amount, if the house should not be accepted
when finished, was made payable at his Hamilton office. The
title purchased was in his name, and the negotiations for the
sale were conducted, and the initial payment was made, in
his regular place of business. When the plaintiff entered into
the contract he had no information as to the nature of the
relations between Shay and the defendant other than was
afforded by the conditions we have described, and possibly by
some disputed declarations of Norwood, as to Shay's au-
thority to act for the defendant, which we have found to be
inadmissible. The recital in the receipt that Shay was acting
in pursuance of an agreement with the defendant might be
regarded as consistent with a reasonable supposition, under
the circumstances, that a sales agency was the purpose of
the agreement. There may have been some ground for an
inference against agency in the fact that the promissory note
was signed by Shay in his own name. Whether the plaintiff
ought to have drawn such an inference at the time he con-
tracted with Shay was a question for the jury to consider.
After Shay's default the plaintiff, as he testifies, called to
see the defendant and was told by him not to worry about
the difficulty which had developed, as "things would be made
all right." This is denied by the defendant, but, with regard

to the question as to the legal sufficiency of the evidence, we must assume the testimony of the plaintiff to be true. In view of all the conditions referred to, we are not willing to hold that the issue of apparent or implied agency ought to have been withdrawn from the jury.

There are exceptions in the record to certain rulings of the trial court, which we are unable to sustain. The plaintiff and his wife were allowed to testify, against the defendant's objection, as to statements made to them by Mr. Norwood to the effect that Shay was "to build the houses for Mr. Culver," and that "whatever Mr. Shay did Mr. Culver would back up." This testimony was incompetent. There was no proof that Norwood's agency was of such a character as to warrant the conclusion that he was authorized to bind the defendant by the declarations quoted. They were equivalent to the assertion by an agent of the existence of another agency which the principal is alleged to have conferred upon a third person. In 2 *C. J.*, 942, cases are cited in support of the proposition that the declarations of an agent are inadmissible to prove or disprove the fact of another agency for the same principal, "unless it appears that the agent making the declaration was authorized to do so, or that it was made as a part of the *res gestæ* in the performance of some duty pertaining to his agency." There is no evidence that the statements attributed to Norwood were made in the discharge of any duty imposed upon him by the defendant, and his actual want of authority to commit the defendant to responsibility for Shay's engagements is clearly shown by the proof. It would not have been competent for Norwood by his declarations to extend his own powers as agent beyond their real limits (*Oxweld Acetylene Co.* v. *Hughes,* 126 Md. 437; *Roland* v. *People's Bank,* 134 Md. 218), and certainly he could not by unauthorized statements as to the agency of another person subject the defendant to a liability which he never agreed to assume.

Exception was also taken to the admission of evidence that Shay had contracts like the plaintiff's with two other

purchasers of cottages to be erected on the lots he was acquiring from the defendant, and that, after Shay's disappearance, the defendant proceeded to build the houses in accordance with the original plans, and, when they were completed and sold to other persons, he paid to the two individuals referred to, who had bought from Shay, the amounts they had paid to him on account of the purchase money. These reimbursements were made a number of months after the plaintiff's purchase had been contracted and after the defendant's responsibility in regard to it had been disavowed. The erection by the defendant of the houses which Shay agreed but failed to build under his contract of purchase does not indicate that the pre-existing relationship between them was that of principal and agent, nor is such a conclusion justified by the fact that, after the lots were finally improved and sold, the defendant voluntarily made good in two instances the losses which purchasers from Shay had suffered through his default. It was testified by the defendant without contradiction that, while denying any liability to the plaintiff, he offered, as in the case of the two other purchasers, to reimburse him out of the proceeds of the property when improved and sold for an increased price, but that the plaintiff declined the proposal and demanded that the money be paid to him immediately. The defendant himself sustained heavy losses in these transactions, but he was apparently disposed to protect the interests of those who had contracted with his defaulting vendee, in order, as he said, "to clear up the situation." This attitude was consistent with his disavowal to the plaintiff of any legal responsibility for Shay's breach of contract. The question as to whether the act of an alleged principal is a ratification of a supposed agency depends upon his intention, and when the act relied on to show ratification is equally consistent with a purpose to the contrary, an intent to ratify is not ordinarily implied. 2 C. J., 491. The proposal and provision by the defendant for the relief of the original purchasers could not

be said to be a recognition of an agency and a liability which were expressly denied.

No reversible error has been found in any of the other rulings to which exceptions were reserved, but the admission of the evidence opposed by the exceptions which we have discussed was prejudicial to the defendant and entitles him to a new trial.

*Judgment reversed with costs, and new trial awarded.*