ELMER G. PORTER, Appellant, *v.* LONG ISLAND RAILROAD COMPANY, Respondent.

Fourth Department, November 30, 1927.

Carriers — carriers of freight — action for damages for failure to deliver — plaintiff shipped two carloads of hay on order bills of lading to Long Island City, specifying " Harold Ave. Yard delivery "— defendant refused to make delivery at yard specified and pleaded congestion in classification yard — Federal tariff regulations (Interstate Commerce Act, § 6, subds. 1, 7) against discrimination, not applicable — contract was valid for delivery at point specified — congestion not defense to absolute refusal to deliver — refusal to deliver was unreasonable, contrary to custom, and constituted breach of contract.

The plaintiff shipped two carloads of hay from Ohio on order bills of lading to Long Island City and specified that the cars should be delivered " Harold Ave. Yard delivery." The hay was not delivered at the Harold avenue yard, but at a yard more than a mile distant therefrom, and the defendant refused to place the cars in the Harold avenue yard upon demand. The plaintiff is entitled to recover damages for breach of the contract of shipment.

The defendant contends that the contract was void as contrary to the provisions of the Federal tariff regulations contained in subdivisions 1 and 7 of section 6 of the Interstate Commerce Act which prohibit a carrier from extending to any shipper any privilege or facility except such as are specified in the tariffs. This contention is not sustained, for the contract did not extend discriminatory privileges to the plaintiff but simply specified the particular spot in the terminal yard where the cars should be placed for convenient delivery, and the plaintiff did not by the contract receive any reduction in rate, since the rate to Long Island City includes the rate to any yard thereat.

The defense that the classification yard was congested will not relieve the defendant from liability, since it refused absolutely to deliver the cars at the Harold avenue yard.

The action by the defendant was unreasonable, constituted a violation of the contract and was contrary to the custom proven to exist in reference to shipments of hay made by the plaintiff.

APPEAL by the plaintiff, Elmer G. Porter, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Seneca on the 13th day of February, 1926, upon the decision of the court rendered after a trial before the court without a jury, a jury having been waived.

*George F. Bodine,* for the appellant.

*Harris, Beach, Harris & Matson [Charles H. Storer* of counsel], for the respondent.

TAYLOR, J. The defendant has an extensive terminal station at Long Island City. It consists of a central portion called a classification yard; immediately west of this, and close at hand, the

Eighth street yard; and about a mile and a quarter to the east of the classification yard the Harold avenue yard. The distance between the classification and Harold avenue yards, proceeding by streets, is somethng over two miles. The Eighth street yard has been in existence for some time, the Harold avenue yard having been more recently established on account of an overflow of business.

Plaintiff, a produce dealer residing in Seneca county, N. Y., shipped to himself at Long Island City two carloads of hay from South Auburn, O., over the Akron, Canton and Youngstown railroad as initial carrier. The shipments were by order bills of lading specifying " Harold Ave. Yard delivery." The cars had been sold by plaintiff for delivery to Paceleo Brothers, who had a storehouse near the Harold avenue yard. The hay was delivered, not at the Harold avenue yard, but at the Eighth street yard. Paceleo Brothers refused to accept delivery at that place, and defendant refused to deliver elsewhere upon demand. Plaintiff paid Paceleo Brothers thirty dollars, the price of trucking one load of hay to their storehouse, and also paid six dollars demurrage charge. The other car was sold by defendant after plaintiff refused to accept it at the Eighth street yard and the sale price was credited to plaintiff. This left a claimed balance of one hundred and fifty-one dollars and seventy-four cents due to defendant, which it has recovered as a counterclaim in this action for damages, which was tried before the court without a jury. The action is based on, *first,* a failure to deliver according to the contracts; and *second,* a claimed obligation resting on defendant to deliver at Harold avenue, even if the bills of lading had not specified the particular yard.

There was testimony to the effect that the plaintiff had been shipping hay to the Harold avenue yard for years; that he had billed thirty-five cars to that yard, all of which were delivered there, and that the two cars involved in this suit were the only ones about which there had been any controversy. It was conceded on the trial that there had been room to place both of these cars in the Harold avenue yard, and that the only congestion was in the classification yard.

Defendant contends that no custom of delivering for Paceleo Brothers at the Harold avenue yard had been established; that whenever reasonably possible the company delivered cars at a point most accessible to the consignee; that the selection of the delivery locus was necessarily always controlled in the main by operating conditions in the classification yard; that for convenience of operation the classification yard was usually kept full and cars were taken on to the Harold avenue yard only as opportunities

fairly presented themselves; that while there is no claim of congestion in either " team yard " (Eighth street or Harold avenue), there was, on account of heavy coal shipments, great congestion in the classification yard just at the times involved; and that to have delivered these two cars at the Harold avenue yard would have caused defendant unreasonable inconvenience and expense.

Defendant also relies upon the Federal tariff regulations contained in subdivisions 1 and 7 of section 6 of the Interstate Commerce Act (24 U. S. Stat. at Large, 380, § 6, as amd. by Hepburn Act [34 id. 586, 587], § 2, and Transportation Act of 1920 [41 id. 483], §§ 409, 411; now U. S. Code, tit. 49, § 6, subds. 1, 7; U. S. Comp. Stat. Supp. § 8569, subds. 1, 7; Barnes Fed. Code Supp. § 7890, subds. 1, 7), particularly the portions of these subdivisions reading as follows:

" The schedules printed as aforesaid by any such common carrier shall plainly state    *    *    *    all other charges which the Commission may require, all privileges or facilities granted or allowed    *    *    *    nor shall any carrier    *    *    *    extend to any shipper or person any privileges or facilities in the transportation of passengers or property, except such as are specified in such tariffs."

Defendant claims that the specification " Harold Ave. Yard delivery " in the bills of lading was inserted by the shipper or a representative of the initial carrier and not by or with the consent of the defendant; that such specification had never been authorized by the Interstate Commerce Commission, which controls all carrying contracts; that these carrying contracts can contain nothing not authorized by the Interstate Commerce Commission; and that these contracts (bills of lading) in question were discriminatory, illegal and void, for the above reasons, and because they extended to this shipper privileges not extended to all shippers by the Federal statutes.

The insertion of the words " Harold Ave. Yard delivery " in these bills of lading without the consent of the Interstate Commerce Commission does not render the contracts illegal under the subdivisions of section 6 of the Interstate Commerce Act mentioned. The contracts do not extend unlawful or discriminatory privileges or facilities to the consignee. They simply indicate an agreement by the carrier to deliver carload lots at a spot in their terminal yard convenient to the consignee. The size of the general terminal is not of essentially determinative importance. For the rate is to " Long Island City " which means to this particular general terminal — to one point in it as well as to another, depending upon custom or agreement. Nor is there any discrimination; for the rate is the same to all. Even the furnishing of different facilities under circum-

stances essentially different does not constitute unjust discrimination. (10 C. J. 481, § 762.)

If goods are accepted for delivery at a particular place, the carrier is bound to deliver at such place. (10 C. J. 252, § 359; *Loomis* v. *N. Y. C. & H. R. R. R. Co.*, 214 N. Y. 447.) In the *Loomis* case there was a shipment to Jersey City and upon the bill of lading appeared the words " Grand St." The Court of Appeals held that it was a jury question whether this was descriptive of the residence of the consignee or whether it indicated the particular designation of the shipment which was binding on the carrier. Although the question does not seem to have been squarely raised, there is no intimation in the opinion that the insertion of these words in the bill of lading brought about discrimination or rendered the contract of carriage illegal.

The plea of congestion in the classification yard is not of avail to the defendant. Congested conditions temporarily existing in that yard — or temporary necessity for a shifting of cars there — might excuse mere delay in delivering at Harold avenue or any other given point in the terminal. But such conditions cannot be resorted to as furnishing excuse for absolute refusal to deliver at all at the point required by the contract of carriage; a point concededly convenient to the consignee.

The position of appellant is made stronger by the testimony relative to the thirty-five former shipments of hay to the Harold avenue yard, which were all delivered there according to contract.

" The duty of the carrier as to making delivery may be determined by established custom or wellknown usage which will be binding on the shipper and the consignee." (10 C. J. 253, § 364, and cases cited.)

" In the nature of things no inflexible formula can furnish a solution of that problem [the ascertainment of when delivery is made]. The limits of place within which delivery is due, will vary with varying conditions (*Mitchell Coal & Coke Co.* v. *Penn. R. R. Co.*, 230 U. S. 247, 263). All that we can safely say is that there must be such a delivery as is customary and reasonable. * * * Since the limits embrace the defendant's plant, there is no dispute that delivery at the point is covered by the rate." (*New York Central & Hudson River R. R. Co.* v. *General Electric Co.*, 219 N. Y. 227.)

We conclude that the bills of lading were valid contracts, that the refusal of defendant to deliver the cars at the Harold avenue yard was unreasonable and contrary to custom, and in each instance constituted a breach of the contract of carriage. The judgment should be reversed and judgment rendered for plaintiff for the

damages sustained. Certain findings of fact and all conclusions of law are disapproved and reversed and new findings and conclusions made.

All concur. Present — HUBBS, P. J., CLARK, SEARS, TAYLOR and SAWYER, JJ.

Judgment reversed on the law and facts, with costs to appellant, and judgment directed for plaintiff for the damages sustained, with costs. Certain findings of fact and all the conclusions of law disapproved and reversed and new findings and conclusions made.