GREYVAN LINES, Inc., v. NESMITH et al.

No. 430.

Municipal Court of Appeals for the
District of Columbia.

Dec. 12, 1946.

H. G. Warburton, of Washington, D. C. (Foster Wood, of Washington, D. C., on the brief), for appellant.

Peter N. Chumbris, of Washington, D. C. (Louis P. Maniatis, of Washington, D. C., on the brief), for appellees.

Before CAYTON, Chief Judge, and HOOD and CLAGETT, Associate Judges.

CLAGETT, Associate Judge.

In August 1943, Morton Nesmith was an army officer living temporarily in Charleston, S. C. Having been ordered overseas, and his wife and son planning to go to Florida he arranged with defendant, Greyvan, to ship his household goods, including personal wearing apparel of himself and wife, to Washington and place them in storage here. Greyvan accepted the shipment, moved it to Washington and turned it over to Ambassador Moving and Storage Company for storage. In January 1944, Mrs. Nesmith, who was still in Florida, wrote Greyvan asking where the goods were located. Greyvan replied in February saying they were "at present" located with Ambassador, giving that company's Washington address. The goods remained with Ambassador until June 1944, when they were delivered by that company to Mrs. Nesmith on her order. She then discovered that the lock had been broken off a cedar chest, and that a large amount of clothes and other

personal effects were missing from the cedar chest and chests of drawers.

A claim was promptly presented to Ambassador, but no claim was ever presented to Greyvan. Ambassador rejected the claim, and Mr. and Mrs. Nesmith sued both companies for the value of the missing goods. The trial court, sitting without a jury, dismissed the case against Ambassador and ordered judgment against Greyvan for $1,350.95. From that judgment Greyvan alone appeals.

Mr. Nesmith testified that before the shipment left South Carolina he requested that Greyvan place the articles for storage "in the Security Storage Company or the Fidelity Storage Company" in Washington, D. C. He stated further that he remembered those two names, that he had a Washington telephone book with him, and that he knew these two concerns were reliable. Mrs. Nesmith testified she had talked with Mr. Parsley, driver of the Greyvan truck, and had told him she would like the goods stored "in one of the best places and I thought that the Security or the Fidelity would be one of the best storage companies for I had heard of so many people going into cheap storage companies and losing things and I had no faith in these little-known places." Mr. Parsley, however, testifying for Greyvan, denied that either of plaintiffs had ever mentioned the name of any specific storage company in Washington.

When the goods were loaded in South Carolina, a bill of lading was made out and signed both by Parsley and Mr. Nesmith. This bill of lading gave the consignee as "Lt. Morton Nesmith, Greyvan Storage, Washington, D. C." This designation had been typed in before the van reached the Nesmith residence and before the verbal directions as to a specific storage place. The bill of lading described the shipment as "household goods and personal effects," and also contained the statement that "shippers are required to state specifically in writing the agreed or declared value of the property. The agreed or declared value of the property is hereby specifically stated by

the shipper to be not exceeding 30c per pound per article." Mr. Parsley also testified that before the goods were shipped an inventory of them was made and signed by himself and Mr. Nesmith. This inventory included among other things a locked cedar chest, but none of the personal effects claimed later to be missing was mentioned separately in such inventory.

■ The trial court, under the evidence, was entitled to believe that plaintiffs ordered the goods shipped either to Fidelity Storage Company or Security Storage Company in Washington, and that Greyvan departed from those instructions. It is contended by Greyvan, however, that both parties were bound by the bill of lading, which designated the destination as "Greyvan Storage" and that by the use of this expression Greyvan, which had no storage facilities, was authorized by plaintiffs to select any storage company in Washington which it desired, and hence that there was no departure from the instructions in designating Ambassador. We believe, however, that the expression "Greyvan Storage" is not open to the construction given it by Greyvan. There was no claim that plaintiffs were informed of any custom as to the meaning of such a phrase. If it meant literally what it said, then Greyvan itself was to store the shipment, and the diversion to Ambassador was wrongful.

■ As we said in Barrett v. Freed, D.C.Mun.App., 35 A.2d 180, 181, "It is well established that if a bailee without authority deviates from the contract as to the place of storage and a loss occurs, which would not have occurred had the property been kept at the agreed place, the bailee is liable for such loss even though he is not negligent." The same rule applies to carriers with respect to wrongful delivery.[1]

■ Greyvan, however, urges that plaintiffs, by their course of conduct, ratified the delivery of the shipment to Ambassador, thus relieving Greyvan from liability for their original misdelivery by accepting Ambassador as their choice of storage company. We do not believe that their conduct

[1] Estherville Produce Co. v. Chicago, R. I. & P. R. Co., 8 Cir., 57 F.2d 50; Porter v. Long Island R. Co., 221 App. Div. 713, 225 N.Y.S. 305, affirmed, 249 N.Y. 591, 164 N.E. 595; Rountree v. Lydick-Barmann Co., Tex.Civ.App., 150 S.W.2d 173.

under the circumstances of this case constitutes ratification so as to relieve Greyvan from liability. "Ratification is a matter of intention. It may be expressed or it may be implied, but, in order to establish an implied ratification, there must be some act or some conduct on the part of the principal clearly showing such intention, * * *."[2] Where the conduct relied on to show ratification is equally consistent with a purpose to the contrary, an intent to ratify, in the absence of other compelling circumstances, will not be implied,[3] or, as has been said by the Supreme Court, "Such ratification may be by express consent, or by acts and conduct of the principal *inconsistent with any other hypothesis* than that he approved, and intended to adopt what had been done in his name."[4] (Italics supplied.) Whether or not the principal has ratified is a question of fact to be determined from all the circumstances of the case.[5] The trial court, by finding for plaintiffs against Greyvan, found that plaintiffs had not ratified the wrongful delivery. We are not at liberty to set aside its finding unless it is clearly erroneous.

Mrs. Nesmith was not notified of the location of her goods until February 11, 1944, while she was still in Florida and her husband was overseas. The letter from Greyvan stated that her goods were "at present" located with Ambassador, from which she could have inferred that they had been stored elsewhere and that they might be moved later. She came to Washington and removed the goods from storage in June 1944, some four months later. We do not believe that it was necessary for her to have disavowed the storing at Ambassador and to have demanded that Greyvan move the goods to Fidelity Storage or Security Storage for so short a period at the risk of being held to have ratified the storage at Ambassador. In any event, where a person learns that his directions have not been followed, he has a reasonable time within which to repudiate the act, and, unless the time is unreasonable as a matter of law, what is a reasonable time is a question of fact for the jury.[6]

Greyvan also urges that the payment of storage charges to Ambassador and the filing of a claim against Ambassador constituted ratification. Mrs. Nesmith testified that Ambassador would not unload her goods from the truck until she paid cash in full for the storage charge. She paid without any means of knowing of the loss or what, if any, relationship existed between Greyvan and Ambassador. Where the agent's unauthorized act places the principal in a position where he is compelled to act, this conduct is not, as to the agent, a ratification of the unauthorized act.[7]

The receipt for payment furnished Mrs. Nesmith by Ambassador provided that "All complaints must be made in writing within 5 days." Thus filing the claim against Ambassador was merely a precautionary step to protect any rights she might have against Ambassador, and should not be held to ratify Greyvan's choice of storage companies.[8] There was no dealing with Ambassador other than the filing of the claim. This neither relieved Greyvan from responsibility nor condoned the conversion.[9]

Nor did filing suit against Ambassador

---

[2] District Nat. Bank v. Maiatico, 61 App.D.C. 242, 60 F.2d 1078, 1079. See also Culver v. Nichols, 140 Md. 448, 117 A. 873; Merritt v. Bissell, 155 N.Y. 396, 50 N.E. 280.

[3] Culver v. Nichols, supra; Harriss v. Tams, 258 N.Y. 229, 179 N.E. 476; Wade v. Wolfson, Sup., 90 N.Y.S. 1078.

[4] Board of Sup'rs of Marshall County v. Schenck, 72 U.S. 772, 782, 18 L.Ed. 556.

[5] District Nat. Bank v. Maiatico, supra.

[6] Birmingham News Co. v. Birmingham Printing Co., 209 Ala. 403, 96 So. 336; Minnesota Linseed Oil Co. v. Montague, 59 Iowa 448, 13 N.W. 438; Uniontown Grocery Co. v. Dawson, 68 W.Va. 332, 69 S.E. 845, Ann.Cas.1912B, 148.

[7] Chaffe v. Barataria Canning Co., 113 La. 215, 36 So. 943. See Restatement, Agency (1934) §§ 101(b), 416(a).

[8] Tosi v. Northern California Bldg. & Loan Ass'n, 23 Cal.App.2d 416, 73 P.2d 286, where filing suit to prevent the Statute of Limitations from running was held not to be ratification. See also A. D. Blowers & Co. v. Canadian Pac. Ry. Co., C.C.W.D.Wash., 155 F. 935; Alderman Bros. Co. v. New York, N. H. & H. R. Co., 102 Conn. 461, 129 A. 47; Eaton v. McWilliams, 52 Idaho 145, 12 P.2d 259; McSwegan v. Pennsylvania R. Co., 7 App.Div. 301, 40 N.Y.S. 51.

[9] McSwegan v. Pennsylvania R. Co., supra.

ratify the unauthorized storage contract made by Greyvan. The suit against Ambassador was not predicated on the storage contract, but was a tort action for the value of the goods lost, and this was not inconsistent with the suit against Greyvan for wrongful delivery. Such a suit does not evidence an intention to ratify an unauthorized contract.[10] Furthermore, the suit from which this appeal is taken was filed against Ambassador and Greyvan jointly and severally, clearly indicating plaintiffs' intention not to rely solely on Ambassador for recovery of the value of the goods lost.

 Nor does plaintiffs' suit against Ambassador, in which Greyvan was a codefendant, estop Greyvan from asserting whatever rights it may have against Ambassador by reason of the judgment recovered by plaintiffs against Greyvan in this suit. Ambassador and Greyvan as codefendants were not adversaries in the pleadings, nor were they in fact at the trial. No issue between them was raised by either imputing liability to the other, either by cross pleadings or responsive pleadings, nor was any issue between them submitted or adjudicated. They appeared through different attorneys, and conducted independent cross-examination and defenses. As was said in City of Owensboro v. Westinghouse, Church, Kerr & Co., 6 Cir., 165 F. 385, 388, "neither defendant had any control over the pleading or defense made by the other, and neither could take up for review an adverse judgment against the other. To all intents and purposes, the conditions were the same as if independent suits had been brought against each of the defendants." Thus, the circumstances of the present trial do not take it out of the general rule, that parties to a judgment are not bound thereby in a subsequent action unless they were adversary parties in the original action, or some issue between them was decided in the original action.[11] Therefore, plaintiffs' suit against Ambassador did not amount to ratification of Greyvan's wrongful delivery even under the theory expressed in the Blowers case, supra [155 F. 937], that "plaintiff cannot put the defendant in a position which deprives it of a remedy for recouping its loss, and yet compel it to pay that loss."

 Greyvan urges as another ground for reversal that the trial court erred in directing a verdict in favor of Ambassador. However, Ambassador was not made a party to this appeal and thus we may not consider this point.[12]

 Greyvan also urges that in any event plaintiffs could not maintain this suit because they did not file any claim against Greyvan whereas one of the provisions of the bill of lading provided that as a condition precedent to recovery "claims must be filed in writing with the receiving or delivering carrier, or carrier issuing this bill of lading, or carrier in possession of the property when the loss, damage, injury or delay occurred, within nine months after delivery of the property * * * or, in case of failure to make delivery, then within nine months after a reasonable time for delivery has elapsed * * *. When claims are not filed or suits are not instituted thereon in accordance with the foregoing provision, no carrier hereunder shall be liable, and such claims will not be paid." This bill of lading provision is valid even in cases of misdelivery due to the negligence of the carrier.[13]

 Plaintiffs received notice of the conversion or misdelivery February 11, 1944; the loss was actually discovered on

[10] The Cabo Villano, D.C.E.D.N.Y. 14 F.2d 978. See also A. D. Blowers & Co. v. Canadian Pac. Ry. Co., supra.

[11] George A. Fuller Co. v. Otis Elevator Co., 245 U.S. 489, 38 S.Ct. 180, 62 L.Ed. 422, reversing 44 App.D.C. 287; Fidelity & Casualty Co. of New York v. Federal Express, 6 Cir., 136 F.2d 35; Ohio Casualty Ins. Co. v. Gordon, 10 Cir., 95 F.2d 605; Hardy v. Rosenthal, 2 Cal.App.2d 442, 38 P.2d 412; Appell v. Schneider & Pomerantz Baking Co., 126 Conn. 16, 8 A.2d 529; Hogg v.

Caudill, 228 Ky. 396, 15 S.W.2d 239; Missouri District Tel. Co. v. Southwestern Bell Tel. Co., 336 Mo. 453, 79 S.W.2d 257.

[12] Babcock v. Norton, 2 Cir., 5 F.2d 153, cert. denied 268 U.S. 689, 45 S.Ct. 509, 69 L.Ed. 1158.

[13] Chesapeake & Ohio Ry. Co. v. Martin, 283 U.S. 209, 51 S.Ct. 453, 75 L.Ed. 983; Georgia, Florida & Ala. Ry. Co. v. Blish Milling Co., 241 U.S. 190, 36 S. Ct. 541, 60 S.Ct. 948.

or about June 21, 1944; a claim in writing was filed with Ambassador within five days of the latter date; and the suit against both defendants was filed March 1, 1945. It results that claim was filed against Ambassador within nine months of notice to plaintiffs of the diversion but not filed, nor suit brought, against Greyvan within such nine months' period. However, suit was filed against Greyvan within nine months of the discovery of the actual loss. Filing suit is the equivalent of filing claim.[14] Plaintiffs urge that Greyvan in making the delivery to Ambassador constituted that company its agent, that Greyvan is estopped to deny such agency and that filing claim with Ambassador was the same as filing it with Greyvan. By its general finding the trial court approved this contention. For the reasons stated in our discussion of the question of ratification and estoppel, we believe that the trial judge was correct in his conclusion. Furthermore, this provision of the bill of lading is to be given a reasonable application. Plaintiffs did not know of any loss and could not have filed a claim until June 21, when they received the goods. They sued within nine months of that date. This was in time.[15]

■■■ Greyvan urges finally that the verdict was excessive. The first ground for this claim is the assertion that the trial court allowed the full original purchase price with no allowance for depreciation, wear and tear. The record does not support this contention. Plaintiffs sued for $2,500.00 and in their bill of particulars stated the cost of the various missing articles item by item. Such cost figures totaled $2,396.90. At the trial detailed figures of value were given by plaintiffs, such figures totaling $1,375.90, and, in addition, there were stipulations at the trial as to a few items totaling $27.50, or a total of $1,403.40. The trial court allowed a total of $1,350.95. As to most items, the original cost was giv-

en together with the approximate age and amount of use. Plaintiffs also gave their estimates of value as contrasted with cost. The measure of damages in such cases is the market value at the time of loss, but with respect to household goods and wearing apparel, which usually have no ready market value, the measure of damages is the value of the goods to the owner; not a fanciful value which he might place upon them, but such reasonable value as, from the nature and condition of the goods and the purpose to which they were adapted and used, they had to him.[16] We have examined the testimony in detail and have concluded that, applying the correct measure of damages, we are unable to say that the finding is plainly wrong or is not supported by substantial evidence. Such being the case, we are bound by the finding.

■■■ Greyvan also urges that the verdict was excessive because the bill of lading contained a clause limiting liability to 30c per pound unless specifically noted otherwise by the shipper on the inventory attached to the bill of lading. Had Greyvan complied with its contract and stored the goods as instructed, it would have been able to rely on the clause limiting liability. But as we said in Barrett v. Freed, supra, "All appellant's trouble arises from failure to carry out his contract." Greyvan is an interstate motor vehicle carrier and as such is subject to the provisions of the Motor Carriers Act, 49 U.S.C.A. § 301 et seq., including 49 U.S.C.A. § 319, making the so-called Carmack Amendment, 49 U.S.C.A. § 20(11, 12), applicable to interstate shipments by motor carrier. Under this amendment limitations of value in bills of lading and in tariffs on file with Interstate Commerce Commission do not apply where the loss was occasioned by the negligence of the carrier.[17]

The judgment is affirmed.

[14] Southern Express Co. v. C. L. Ruth & Son, 5 Ala.App. 644, 59 So. 538; Atlantic Coast Line R. Co. v. Varner, 36 Ga.App. 441, 137 S.E. 83; Galveston, H. & S. A. Ry. Co. v. Gibbons, Tex.Civ. App., 202 S.W. 352.

[15] Accord, Jamison v. New York & P. R. S. S. Co., D.C.S.D.N.Y., 241 F. 389.

[16] Smith's Transfer & Storage Co. v. Batigne, D.C.Mun.App., 34 A.2d 705.

[17] Boston & Maine R. Co. v. Piper, 246 U.S. 439, 38 S.Ct. 354, 62 L.Ed. 820, Ann.Cas.1918E, 469.