## JACOBSON v. PENNSYLVANIA R. CO., Inc.

### No. 520.

Municipal Court of Appeals for the District of Columbia.

July 25, 1947.

Benjamin Prager, of Washington, D. C. (Martin Mendelsohn, of Washington, D. C., on the brief), for appellant.

John R. Wall, of Washington, D. C. (Hugh B. Cox, of Washington, D. C., on the brief), for appellee.

Before CAYTON, Chief Judge, and HOOD and CLAGETT, Associate Judges.

CLAGETT, Associate Judge.

The sole question involved in this appeal is the measure of damages to be applied for the loss of a part of a shipment of household goods forwarded by plaintiff-appellant via the railroad line of defendant-appellee from New Brunswick, New Jersey, to Houston, Texas. By stipulation the missing part of the shipment was valued at $900 and that amount was claimed by plaintiff. Defendant admitted liability for the loss but claimed that it was covered by an agreed valuation of $26 on the basis of a minimum freight rate obtained by plaintiff in accordance with tariffs filed with the Interstate Commerce Commission under the Carmack Amendment to the Interstate Commerce Act.[1] The trial court upheld defendant's contention and limited plaintiff's judgment to $26. Plaintiff appeals.

The shipment, consisting of five cartons of household goods and weighing 760 pounds, was forwarded on a through bill of lading over defendant railroad as the initial carrier, consigned to plaintiff at a specified address in Houston. When the shipment arrived at Houston, a post card was sent by the delivering carrier to another person having the same name as plaintiff but living at a different address. The other person, not the plaintiff, called the delivering carrier and asked that the shipment be delivered to her address. Such delivery was made, but the railroad did not pick up the bill of lading nor request that it be exhibited nor obtain a delivery receipt.

When plaintiff arrived in Houston and found that her shipment had not arrived at her address, she notified defendant's agent and thereupon such agent recovered a portion of the shipment at the address where it had been delivered. Plaintiff identified the portion of the shipment which had been recovered and accepted it from the railroad. Plaintiff then filed a claim against defendant for the full value of the missing part of the goods.

As shown by the uniform straight bill of lading introduced in evidence, the entire shipment weighed 760 pounds, the class or rate marked thereon was 3.74 (meaning a rate of $3.74 per 100 pounds), and it was a prepaid shipment for which defendant was paid the sum of $28.42, plus tax. The bill of lading was signed by plaintiff's agent as shipper.

There were also received in evidence a certified copy of the tariff on file with the Interstate Commerce Commission covering the shipment in question and also a certified copy of an order of the Commission authorizing the establishment for the transportation of household goods of rates dependent upon the released value of such household goods. The tariff provided a sliding scale of rates dependent upon value, such values running from a minimum of 10c a pound to a maximum of $5 per pound. It was not disputed that the shipment in question was forwarded at the minimum rate. Since the missing part of the shipment weighed 260 pounds its value at the minimum shown by the tariff was $26, the amount awarded plaintiff by the trial court.

There is no dispute between the parties as to the liability of a carrier for loss of goods entrusted to its care whether the loss is caused by nondelivery or by wrongful delivery. Plaintiff, however, urges that there was a deviation from the carrier's contract and therefore the limitation of liability contained in the bill of lading and the tariffs on file with the Interstate Commerce Commission should not apply. We are unable to agree with this contention.

As we have stated recently,[2] the purpose of the Carmack Amendment was to achieve uniform liability for loss of or damage to goods transported in interstate commerce. The Supreme Court has held on numerous occasions that a provision in a contract of carriage limiting liability to a valuation declared for the purpose of determining which of two alternative rates is applicable to the shipment is valid.[3] It is also thoroughly established that under the amendment limitation of liability is applicable in cases of failure to deliver, whether such failure is deemed a misdelivery or a nondelivery.[4] The knowledge of

[1] 49 U.S.C.A. § 20(11).

[2] Railway Express Agency, Inc., v. Marchant Calculating Machine Co., D. C.Mun.App., 52 A.2d 277.

[3] Union Pacific R. Co. v. Burke, 255 U.S. 317, 41 S.Ct. 283, 65 L.Ed. 656, and cases cited therein.

[4] Georgia, F. & A. R. Co. v. Blish

the shipper that the rate is based upon the value is to be presumed from the terms of the bill of lading and the published schedules filed with the Commission.[5] "That it was in the power of the carrier under the Act to Regulate Commerce, as amended, to limit liability even in case of negligence by affording the shipper an opportunity to pay a higher rate and secure a higher recovery than the one initially fixed by the carrier, is so conclusively settled as to be beyond controversy.[6]

 The theory back of the Carmack Amendment as interpreted by the Supreme Court is that to allow one shipper to recover more than the so-called released value in case of loss would be to give that shipper a preference over others similarly situated and thus violate the whole spirit of the Interstate Commerce Act. Here plaintiff could have valued her shipment as high as $5 a pound, paid the higher rate commensurate with such value and then recovered her entire loss. She elected instead to ship at the lowest rate, and she is now estopped to claim the higher value. We conclude, therefore, that the trial court ruled correctly on the legal question involved.

Plaintiff relies strongly on two decisions of this court, namely, Barrett v. Freed, D.C.Mun.App., 35 A.2d 180, and Greyvan Lines, Inc., v. Nesmith, D.C.Mun.App., 50 A.2d 434. Barrett v. Freed, however, involved a limitation of liability in a warehouse storage contract and did not concern a carrier subject to the Interstate Commerce Act and therefore is clearly distinguishable from the present case. While Greyvan Lines, Inc., v. Nesmith did involve an interstate motor carrier, no evidence was presented in that case regarding any applicable orders of the Interstate Commerce Commission nor of any tariffs on file giving to shippers a choice of rates based upon a limitation of liability. However, we did state in our opinion in that case that limitations of value in bills of lading and in tariffs on file with the Interstate

Commerce Commission "do not apply where the loss was occasioned by the negligence of the carrier." [50 A.2d 439.] Such statement was unnecessary under the facts of that case and did not affect the result but to avoid misunderstanding in the future we now say that the statement was erroneous.

Affirmed.

Milling Co., 241 U.S. 190, 36 S.Ct. 541, 60 L.Ed. 948; Adams Express Co. v. Croninger, 226 U.S. 491, 33 S.Ct. 148, 57 L.Ed. 314, 44 L.R.A.,N.S., 257.

[5] Adams Express Co. v. Croninger, 226 U.S. 491, 509, 33 S.Ct. 148, 57 L. Ed. 314, 44 L.R.A.,N.S., 257.

[6] American Express Co. v. United States Horse Shoe Co., 244 U.S. 58, 62, 37 S.Ct. 595, 61 L.Ed. 990.